(159 App. Div. 621)

### CITY OF GENEVA v. FENWICK.

(Supreme Court, Appellate Division, Fourth Department. December 5, 1913.)

1. MUNICIPAL CORPORATIONS (§ 931*)—BOND ISSUE—VALIDITY—TIME OF PAYMENT.

   Under the act to incorporate the city of Geneva (Laws 1897, c. 360, § 141, as amended by Laws 1910, c. 560, § 23), prescribing the time when bonds issued to meet an extraordinary expenditure for municipal purposes shall mature, and for the payment thereof, the bonds issued for such purpose must be made payable in "yearly installments" during a term not exceeding 20 years; hence an issue of bonds dated 1912, payable in five installments during the years 1925 to 1929, inclusive, is invalid.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1944–1947; Dec. Dig. § 931.*]

2. MUNICIPAL CORPORATIONS (§ 935*)—BOND ISSUE—CURE OF ILLEGALITY.

   The Home Rule Bill (Laws 1913, c. 247) does not supersede the provision of the act to incorporate the city of Geneva (Laws 1897, c. 360, § 141, as amended by Laws 1910, c. 560, § 23) that bonds issued to meet an extraordinary expenditure for municipal purposes shall be payable in yearly installments during a term not exceeding 20 years, and hence will not authorize the common council by ratification of the bond issue to cure a defect arising from a postponement of maturity of bonds issued for such purpose.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1951; Dec. Dig. § 935.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MUNICIPAL CORPORATIONS (§ 933*)—BOND ISSUE—CURE OF ILLEGALITY.

   Where bonds issued by the city of Geneva to meet an extraordinary expenditure for municipal purposes were not payable annually, as required by the city charter (Laws 1897, c. 360, § 141, as amended by Laws 1910, c. 560, § 23), but were payable in five annual installments during the years 1925 to 1929, inclusive, the invalidity of the issue was not cured by the approval of the voters of the municipality.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1948, 1949; Dec. Dig. § 933.*]

Action by City of Geneva against Douglas Fenwick. Submitted upon an agreed statement of facts pursuant to Code Civ. Proc. § 1279. Judgment directed for defendant.

N. D. Lapham, of Geneva, for plaintiff.

Caldwell, Masslich & Reed, of New York City (Robert R. Reed and Herbert M. Johnston, both of New York City, of counsel), for defendant.

MERRELL, J. The parties hereto have agreed upon and submit to this court a statement of facts relative to the validity of an issue of municipal bonds by the plaintiff, and as to defendant's obligation to accept and pay for said bonds under his bid therefor heretofore made.

The material facts leading up to the questioned bond issue and affecting the validity thereof are as follows: On March 16, 1911, complaint having been made by the state and local health authorities of the unsatisfactory and impure condition of plaintiff's water supply, the board of public works, at a regular meeting, adopted a resolution to construct a slow sand filtration plant for the purification of the city's water supply, at an estimated cost of $40,000, and requesting that the common council of the city of Geneva appropriate and place said sum to the credit of the water fund for such purpose. Said resolution of the board of public works was transmitted to the common council and was by it, at its regular meeting held March 17, 1911, referred to its finance committee. At its regular meeting held April 21, 1911, said common council adopted a resolution authorizing the board of public works of said city to construct such slow sand filtration plant, and providing therefor an extraordinary expenditure of $40,000. A further resolution was then adopted by plaintiff's said common council that for the purpose of raising said funds the city of Geneva issue its bonds to the amount of $40,000, the bonds to be in the denomination of $1,000 each, to bear date April 1, 1912, and to be made payable in five equal annual installments of $8,000 on the 1st day of April in each of the years 1925 to 1929, both inclusive; or, in other words, that eight of said bonds should mature on the 1st day of April in each of said five years, with interest at the rate of 4½ per cent. per annum, payable semiannually on April 1st and October 1st in each year. The resolution so adopted by said common council further provided for the raising by taxation annually of moneys with which to pay the interest accruing annually on said bonds, and the several installments of principal as they fell due, and provided for the due publication of such resolution and the submission thereof at a special election of the taxpayers of said city to be

held on the 23d day of May, 1911, to decide whether such expenditure should be made and the amount thereof raised by tax as so provided. Pursuant to said resolution, publication was duly made and the said special election duly held, resulting in the adoption of the proposition submitted. Thereupon the board of public works of the city of Geneva proceeded to construct said filtration plant, and the same has been completed at an expense of about the sum of $40,000. Thereafter, and on November 21, 1912, the common council of said city of Geneva adopted a resolution authorizing the issuance of said bonds in the denomination and maturing as before specified, and thereupon adopted a resolution authorizing the city treasurer to advertise for bids for a sale of said bonds. Thereafter said bonds were bid in by Messrs. Ladenburg, Thalmann & Co., brokers, of the city of New York, at $101.19 per par value of $100. Said bonds shortly thereafter were printed and executed by the proper city authorities, but the same were refused by said brokers, acting under the advice of counsel, for the reason that the maturities of said bonds were not in accordance with the charter provisions of the city of Geneva, which charter, under said brokers' contention, provided for the maturity of said bonds in equal annual installments from the date of their issue. It was claimed by counsel for said brokers that the postponement of the maturities of said bonds to the years 1925 to 1929, inclusive, was jurisdictional and invalidated the entire issue. Thereupon a validating act was passed by the state Legislature to cure any defects of procedure relating to said bond issue, but the same was vetoed by the Governor upon the ground that the Home Rule Bill (so called), shortly theretofore enacted by the Legislature and which had become a law, empowered the local authorities to remedy the alleged defects. Counsel for said brokers, on being appealed to, signified that, if the Home Rule Bill was properly enacted, no special law, validating the Geneva bond issue seemed necessary. Thereupon a resolution was adopted by the common council of the plaintiff confirming and ratifying the bonds maturing as aforesaid, and ratifying and confirming and declaring said bonds to be legal, valid, and binding obligations upon the said city of Geneva. However, before said action was fully consummated, the bid of Ladenburg, Thalmann & Co. for said bonds was withdrawn. On May 15, 1913, at a regular meeting of the common council of plaintiff, a resolution was adopted authorizing the city treasurer to again offer said bonds for sale, and the same were thereafter sold at private sale to the defendant, doing business under the name of Douglas Fenwick & Co. of New York City, at a premium of $5 and accrued interest from April 1, 1913, to date of delivery. Thereafter, and on July 25, 1913, defendant rejected said bond issue upon grounds set forth in an informal opinion rendered by his counsel, taking the same position with reference thereto as that urged by the first bidders, to wit, that the maturity of said bonds had been unduly postponed, and that the attempt to cure the jurisdictional defect by action of the common council, taken under the Home Rule Law, was ineffective. As the result of such rejection, the city of Geneva is without funds to pay for its said improvement, and has joined with the last bidder for said bonds above named in a submission of the controversy to this court.

. The common council of the city of Geneva claims that the bond issue in question was legal, and that any defect in relation thereto was remedied by its action under the provisions of the Home Rule Bill, and that under his bid for the bonds the defendant is legally bound to receive and pay for the same. The questions, therefore, involved in this submission, and which we are to determine, are: First. Was the issue of bonds to pay for the construction of a filtration plant in substantial compliance with the requirements of the charter of the city of Geneva? And, second. If the said bond issue was invalid, did the action of the common council, taken under the provisions of the Home Rule Bill, remedy such defects?

[1] The city of Geneva was incorporated by chapter 360 of the Laws of 1897. Section 141 of said charter, as amended by chapter 560 of the Laws of 1910, provides for the raising of moneys for extraordinary expenditures and for special elections of taxpayers to vote thereon. After outlining the mode of conducting special elections, the qualification of the voters, form of ballot, etc., section 141 authorizes the common council to borrow the amount voted for an improvement, or at the option of the common council, not less than two-thirds of the entire council voting in the affirmative, the city may issue its bonds for the whole or any part of the sum or sums voted at said special election. Said section 141 then prescribes the time when said bonds shall mature, and the payment thereof, as follows:

"Said bonds to be paid in yearly installments during a term of years not to exceed twenty, with interest at a rate not to exceed six per centum per annum, payable yearly or half yearly, as the council may determine. The annual installment of principal and interest on said bonds, falling due each year, shall be part of the one per centum maximum city taxes as provided in paragraph five of section one hundred and eleven of this act."

It is the contention of the defendant that, under such charter provision of the city of Geneva, the only legal obligations which were authorized under the ordinance and referendum thereon were bonds maturing in installments payable each year during the term of 20 years, dating from April 1, 1912. The question which we are to determine is as to the construction to be placed upon the words of the Legislature above quoted, which govern the issuance of bonds by the plaintiff city. · It seems clear to me that the Legislature intended that said bonds should be payable in yearly installments during a term of years not to exceed 20, with interest not to exceed 6 per cent., payable yearly and half yearly, and that it was the clear legislative intent that said bonds should mature in equal annual installments following their issue. The words of the statute above quoted would seem to have no technical or hidden meaning, and, when the Legislature said that the bonds should be payable in "yearly" installments "during" a term of years not to exceed 20, it meant that said installments should become due each year. And the further provision above quoted, "The annual installment of principal and interest on said bonds, falling due each year, shall be part of the one per centum," etc., would seem to signify the intent on the part of the Legislature to make a payment of principal to fall due each year when the interest became payable. Certainly the payment of

interest could not be postponed until 1925, and it seems to me no more could the payment of the installments of principal be postponed, but that it was the clear intent of the Legislature that the bonds should mature in annual installments during such term, not exceeding 20 years, as should be fixed.

[2] But it is claimed that any defect which may have existed with reference to the postponement of maturity of said bonds, and any failure to substantially comply with the requirements of the city charter with reference to raising said moneys, was cured by the acts of the common council in ratifying and confirming said bond issue and in declaring said bonds to be legal and binding obligations upon the plaintiff. I am unable to agree with this contention of the plaintiff. The Home Rule Bill (so called) is found at chapter 247 of the Laws of 1913 (adding to General City Law [Consol. Laws, c. 21; Laws of 1909, c. 26], art. 2a) and is general in its character. It does not seem to me that the act was intended to supersede the existing provisions of law, and particularly in this case the provisions of the city charter of the city of Geneva, above referred to. Nor does it seem to me that it was the purpose of such act to change plain provisions of law, ample and sufficient to enable a municipality to exercise a given power. In this case the statute clearly provided the method by which moneys to be used for extraordinary purposes could be raised, and, where the same were to be raised by the issuance of the city's bonds, the conditions and terms thereof were plainly provided. The defendant contends that the purpose of this legislation was to place all municipalities upon a common plane with respect to their powers, not to invest any one with the right to proceed under its provisions where it could achieve the same object under previously existing special legislation. Each municipality can exercise such prerogatives as are delegated to it by the Legislature, and I do not believe that by the enactment of the Home Rule Bill (so called) the Legislature intended to confer upon municipalities the right to override plain charter provisions, ample and efficient to accomplish a given purpose. To hold otherwise would be to invest municipalities with the right to frame their own charters and to utterly disregard special powers conferred upon them by the Legislature. It seems to me that the powers granted by the Home Rule Bill were not in substitution of the powers, rights, and privileges existing in any municipality pursuant to any existing provision of law. Where charters are complete and contain all necessary powers to attain a given purpose, it is idle to invoke the aid of the act referred to. I, therefore, am of the opinion that chapter 247 of the Laws of 1913 did not authorize action to be taken by the common council which would cure a jurisdictional defect arising from the postponement of the maturity of said bonds.

[3] Nor do I believe that the contention of the plaintiff that the voters of the municipality in adopting the proposition and approving of the same cured the defect in the ordinance and ratified its provisions. If this were so, by referendum any statutory requirement might be dispensed with. The difficulty with this simply is that a municipality has no greater powers than are delegated to it by the Legislature. The city of Geneva had no power to issue bonds except in substantial conform-

ity to the legislative requirements in relation thereto. And, while very properly the Legislature required a submission of the proposed expenditure to the taxpayers, yet there must be a substantial compliance on the part of the common council with the terms of the powers delegated to it, and in the absence thereof the subsequent election is a nullity.

The plaintiff requests that, in the event of the adverse determination of this court to its contention as to the validity of said bonds and the power of the common council to cure any defect, this court suggest whether the said Home Rule Bill might authorize the common council to review its previous action and redistribute the maturities in accordance with its construction of the city's charter. I do not think it profitable or proper for us to lay down a rule for *guidance in this case* under any possible state of facts which might hereafter arise, but which is not now before us.

Judgment should be directed for the defendant declaring said bonds unauthorized and dismissing the complaint, but without costs, in accordance with the stipulation of the parties. All concurred.

Judgment directed for the defendant upon the submission, declaring the bond issue unauthorized, without costs of the submission to either party.