THE BROOKLYN CITY RAILROAD COMPANY, Respondent, *v.* GROVER A. WHALEN, Individually and as Commissioner of Plant and Structures of the City of New York, Appellant.

Second Department, May 10, 1920.

**Municipal corporations — city of New York — power to operate stage or bus lines on streets — power of city to grant franchise to itself — sections 19 and 20 of Home Rule Act construed and applied — inadequacy of street railway service as creating emergency authorizing city to operate stage line — right of street railway company to equitable relief.**

The city of New York has no power to operate bus or stage lines in its streets unless the power has been granted by the State.

A more liberal method of interpretation may be applied by the courts to powers granted to a municipality for public purposes than to those granted to private corporations, but when a question arises whether a corporate act is beyond its powers, the answer must be found in the statutes which constitute its charter.

Section 1458 of the Greater New York charter contains an express prohibition against the establishing and maintaining of bus or stage lines on the streets of the city except by grant of a franchise, and while by section 242 of the charter the city is made the agent of the State to grant franchises, it has no power to grant a franchise to itself.

The city of New York has no power to operate bus or stage lines on its streets under section 19 of the Home Rule Act (article 2-A of the General City Law) granting to cities the general power to " regulate, manage and control its property and local affairs," for the streets are not the " property " of the city in the sense in which that word is used in the act and the power to control " local affairs " does not add new powers to the corporation.

No authority for the operation of a bus or stage line by the city is to be found in the grant of specific powers contained in section 20 of the Home Rule Act.

APP. DIV.—VOL. CXCI.      47

The Home Rule Act does not empower the city to operate a bus or stage line in order to promote the general welfare of the citizens, for the act must be interpreted consistently with the fundamental principle that the powers of municipal corporations are such only as are granted expressly or by necessary implication in the laws that constitute the charter, and from the use of the words " general welfare " in section 21 of the act no implication can be drawn of a grant of power to cities in the State to assume those activities which according to our conception of government, founded on the principle of individualism, is left to private enterprise.

The operation of a stage or bus line by the city over routes paralleling street railway lines is not authorized on the ground that the inadequacy of the service of the street railways has created an emergency, for a permanent condition of inadequacy of service is not an emergency.

While an emergency may justify the omission of prescribed conditions to the exercise of municipal power, the grant of power to the city is not changed by an emergency, nor can it authorize acts entirely outside the chartered powers.

The board of estimate and apportionment had no authority to authorize the defendant to establish and operate a stage or bus line on the streets of New York city paralleling the plaintiff's tracks, except under a franchise granted after the determination of its necessity and convenience in the manner prescribed by law.

The plaintiff suffers a special injury from the competition of the stage lines established by the defendant and from the added obstruction to the operation of its cars under its franchise, giving it a standing in a court of equity to enjoin the defendant from maintaining and operating stage lines of motor vehicles.

APPEAL by the defendant, Grover A. Whalen, individually and as commissioner, etc., from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 3d day of April, 1920, enjoining the defendant " from operating or in any manner assisting in the operation or supervising the operation or maintaining or in any way aiding in the maintenance of  *  *  *  specified bus line or lines of motor vehicles, in the Borough of Brooklyn, City of New York," upon certain routes described in the said order.

The plaintiff, a street railroad company, owns and operates lines of surface cars in Brooklyn. In the fall of 1919 the board of estimate and apportionment authorized the defendant to operate motor vehicles for the carrying of passengers on certain prescribed routes. Pursuant thereto he established routes, and under his authority and supervision lines of

motor vehicle stages or omnibuses are running over the routes specified in the order and paralleling the tracks of the plaintiff company. This action is brought to enjoin the defendant from maintaining and operating the stage lines of motor vehicles. An order enjoining the defendant pending the trial of the action was granted at the Special Term, and the defendant appeals to this court.

*William B. Carswell* [*John P. O'Brien, Corporation Counsel,* and *Joseph A. Devery* with him on the brief], for the appellant.

*Jackson A. Dykman* [*William N. Dykman* with him on the brief], for the respondent.

BLACKMAR, J.:

The city of New York has no power or authority to operate bus or stage lines in its streets unless it be found in a grant from the People, represented in the Legislature. Its charter and other general and specific laws applicable to it are the measure of its powers and duties. Any act not authorized by such laws is *ultra vires* of it and a usurpation. The city, which is a municipal corporation, is a creature of the law. The law which created it defines its powers and duties. It has no more right to act in excess of the powers granted it than has a private corporation. A more liberal method of interpretation may be applied by the courts to powers granted a municipality for public purposes than to those granted to private corporations; but when a question arises whether a corporate act, either of a municipal or a private corporation, is beyond its powers, the answer must be sought in the statutes, which constitute its charter.

The statutes of the State will be searched in vain for any grant of power, express or implied, to the city of New York to operate bus or stage lines such as those we are now considering. And, further, section 1458 of the charter of the city* contains an express prohibition against establishing and maintaining such lines except by grant of a franchise. Such franchise has not been granted by the Legislature to the city. The city, acting through the board of estimate and

---

* Laws of 1901, ch. 466, § 1458, as added by Laws of 1913, ch. 769.— [REP.

apportionment and the mayor, has been made the agent of the Legislature to grant franchises for the use of its streets (Greater N. Y. Charter, § 242),* but it has no power to confer a franchise on itself; and the power to grant franchises is surrounded by limitations and conditions which have in no wise been complied with in this case.

The corporation counsel contends that the city operation of stage lines is authorized by the so-called Home Rule Act (General City Law, art. 2-A, as added by Laws of 1913, chap. 247), and, if not, is justified as an emergency measure. These suggestions, elaborately briefed and earnestly argued, demand our careful consideration.

The Home Rule Act, as found in article 2-A of the General City Law, contains a general grant of powers (§ 19)† and a grant of specific powers (§ 20).‡ The general grant of powers is to " regulate, manage and control its property and local affairs."ᐧ The city is not only a political subdivision having governmental powers, but a property owner; but it does not own the streets, for they are highways for the use of the public at large. A municipality has certain powers and duties with respect to the streets within its boundaries; but even if it owns the land in the bed of the streets, it cannot divert them from public use. The streets are not the "property" of the city in the sense that the word is used in the Home Rule Act. The grant of power to regulate, manage and control its property does not, therefore, confer power of municipal operation of transportation lines.

The " local affairs " which the Home Rule Act authorizes the city to regulate, manage and control, are affairs within the jurisdiction of the city by the law of its being. The words " local affairs " are so indefinite in their meaning that they will probably occasion much litigation, and many judicial opinions will be written on their construction with reference to conditions that may arise. It would be futile to attempt a definition of what constitutes " local affairs " within the

---

* Amd. by Laws of 1905, chap. 629.— [REP.

† Added by Laws of 1913, chap. 247.— [REP.

‡ Added by Laws of 1913, chap. 247, as amd. by Laws of 1917, chap. 483.— [REP.

meaning of the act. But one thing, I think, may be safely said, and that is that the power to control " local affairs " does not add new powers to the corporation. The act refers to local affairs which were such at the time the act was passed in 1913. Certainly, municipal operation of bus and stage lines was not a local affair at that time.

The act (§ 20)* contains a grant of specific powers, which are set forth in twenty-six subdivisions. I do not find among these special powers any authority for municipal operation of transportation. In fact, here again is the provision that the city had power to grant franchises for the use of its streets, from which the implication results that such lines can be operated only under franchises granted under conditions prescribed by law.

We cannot close our eyes to the far-reaching nature of the argument of the corporation counsel. If the Home Rule Act authorizes municipal operation of common carrier lines, it is difficult to see any limit to its scope. The city could do whatever its existing officers thought was for the general welfare. The line of argument that the Home Rule Act empowers the city to operate stage lines of motor vehicles in order to promote the welfare of the citizens, would with equal force apply to establishing municipal markets, municipal department stores, municipal drug stores, or any other enterprises which the officials in power conceived would be in the interest of public welfare. No such meaning can be given to the act. It must be interpreted consistently with the fundamental principle that the powers of corporations, both municipal and private, are such only as are granted expressly or by necessary implication in the laws which constitute the charter. From this use of words of indefinite import, like " general welfare," defined to include " the promotion of education, art, beauty, charity, amusement, recreation, health, safety, comfort and convenience " (Home Rule Act, § 21),† no implication can be drawn of a grant of power to cities in the State to assume those activities which according to our

---

* Added by Laws of 1913, chap. 247, as amd. by Laws of 1917, chap. 483.— [REP.

† General City Law, § 21, as added by Laws of 1913, chap. 247.— [REP.

conception of government founded on the principle of individualism, is left to private enterprise. I conclude that the Home Rule Act does not contain any grant of power to the city, express or implied, to operate lines of transportation in the streets. (*City of Geneva* v. *Fenwick*, 159 App. Div. 621; *People ex rel. Kieley* v. *Lent*, 166 id. 550; *People ex rel. City of New York* v. *New York R. Co.*, 217 N. Y. 310.)

The appellant contends that the maintenance of the bus lines is justified by emergency, and the inadequacy of the service of the street railway lines is put forward as creating the emergency. The defendant was authorized by the board of estimate and apportionment to establish these lines last fall, and the buses are still running on the streets. The word "emergency" is defined as a sudden or unexpected occurrence or condition calling for immediate action. This can hardly be applied to a permanent condition of inadequacy of service, and it is plainly to be seen that there is no emergency which justifies the continued operation of the stage lines. It is not necessary to decide whether any sudden or unexpected occurrence would justify the city in the temporary use of buses or stages to meet an emergency. That is not the question before us. We are considering the installation, maintenance and continued operation of buses upon established routes. The rule justifying action by a municipality under emergency is of limited application. An emergency may justify the omission of prescribed conditions to the exercise of municipal power. This doctrine rests on the reasoning that the Legislature, in granting the power and prescribing methods of and conditions to its exercise, could not have intended such conditions and methods to apply to cases where it is impossible to meet them. The important point is that the municipality has the power; the method of its exercise is a secondary consideration. And in times of stressing emergency, when prompt action is required for the public welfare, it is better that methods and conditions be unfulfilled, than that the municipality should fail to act. (*North River Electric Co.* v. *New York*, 48 App. Div. 14.) But the grant of power to the city is not changed by an emergency, nor can it authorize acts that are entirely outside the chartered purpose.

Although the city has no power to operate bus lines, it may grant franchises for that purpose. That is done through the board of estimate and apportionment and the mayor. (Greater N. Y. Charter, § 242.)\* But there are certain limitations and conditions under which this power is to be exercised, none of which have been complied with in this case. (Greater N. Y. Charter, §§ 73, 74.)† Section 25 of the Transportation Corporations Law‡ requires the owner or operator of a stage route in the streets of any city to obtain a certificate of convenience and necessity. This has not been done. There is no pretense that a franchise has been granted to operate the bus lines in question, and the argument of the corporation counsel attempts to sustain it as municipal operation. The anomalous situation is that while the statute expressly prohibits the operation unless under a franchise (Greater N. Y. Charter, § 1458),§ the city has, in plain disregard of the provisions of its own charter, without granting a franchise, authorized individuals to run these automobile stages on established routes through the streets for their own profit.

If the welfare and convenience of the citizens require additional accommodations for transit such as would be furnished by established stage routes, there is a legal way to accomplish the result. The city has power to grant a franchise, subject to the determination of its necessity and convenience. But the city has no power of municipal operation; nor has it the right to authorize others so to use the streets without observing the conditions to a legal and regular grant of a franchise.

The plaintiff plainly suffers a special injury from the competition of these stage lines and from the added obstruction to the operation of its cars under its franchise. Even if the purpose of establishing the lines is not to injure the plaintiff in the exercise of its legal rights, it has that effect. Moreover, no bus line can be established in streets occupied by the plaintiff unless a certificate of convenience and necessity be

---

\* Amd. by Laws of 1905, chap. 629.— [REP.

† Amd. by Laws of 1905, chap. 629, and Laws of 1914, chap. 467.— [REP.

‡ Added by Laws of 1913, chap. 495, as amd. by Laws of 1915, chap. 667.— [REP.

§ Added by Laws of 1913, chap. 769.— [REP.

secured, and upon an application for such certificate the plaintiff has a right to be heard. (Transp. Corp. Law, § 26;* *People ex rel. N. Y. C., etc., Co.* v. *P. S. Comm.,* 195 N. Y. 157.) A common carrier, therefore, has a legal right to question the necessity and convenience to the people of a paralleling common carrier. (*Matter of Kings, Queens & Suffolk R. R. Co.,* 6 App. Div. 241.) In the days before the power of public regulation and control of common carriers was established and recognized as it is now, competing roads were built, not for the benefit of the public, but so to injure the established road as to compel it to purchase in self-defense. This was recognized as an abuse, and the correction applied was the law that no line of transportation should be established without a certificate of public convenience and necessity.† Whether that requirement would apply to municipal operation is irrelevant to this inquiry. If the Legislature should authorize municipal operation, the act authorizing it would probably determine whether the certificate should be required. The plaintiff, having a franchise to operate in the public streets, and being under financial pressure of the prevailing economic conditions, suddenly finds its most profitable lines paralleled by stages operating under the control of the defendant without authority of law and without having obtained a certificate of public convenience and necessity. I think the plaintiff has a standing in a court of equity for relief.

Whether the plaintiff has failed in fulfilling the obligations of its franchise has nothing to do with the question now before us. If it has, the law affords a remedy. The orderly processes of the law are better and probably more effective than an attempt at correction by an unauthorized and illegal administrative act.

The order should be affirmed, with ten dollars costs and disbursements.

Jenks, P. J., Mills, Rich and Putnam, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.

---

* Added by Laws of 1915, chap. 667, as amd. by Laws of 1919, chap. 307. — [Rep.

† See Public Serv. Comm. Law, § 53, and antecedent statutes.— [Rep.