KINGSBRIDGE RAILWAY COMPANY and Another, Appellants, *v.* THE CITY OF NEW YORK and Others, Respondents.

First Department, February 9, 1923.

Municipal corporations — action to restrain city of New York from carrying out resolution to establish bus lines within city — commissioner of plant and structures was given power by resolution to arrange for and supervise operation of bus lines — privately owned buses were operated under direction of commissioner of plant and structures paralleling plaintiff's street car lines — no emergency shown — bus lines cannot be maintained and operated or established without compliance with Transportation Corporations Law, §§ 25 and 26, Public Service Commission Law, § 53, and Greater New York Charter, §§ 74 or 1458 — temporary injunction granted.

In an action to restrain the city of New York from taking any steps or doing anything toward the carrying out of a resolution adopted by the board of estimate and apportionment, which authorized the commissioner of plant and structures to arrange for the necessary motor vehicles and to operate or to regulate and supervise the operation of the same along certain routes, it appeared that a bus line was established with terminals at One Hundred and Fifty-fifth street and Eighth avenue and Dyckman street ferry; that said bus line, which was three and one-half miles long, paralleled the street railway line of the plaintiff for nearly the entire distance; that the buses in operation thereon were privately owned and the operators had merely a State omnibus license and a chauffeur's license; that, while the buses had signs on the outside and inside which indicated that they were being operated by the department of plant

and structures, the owners of the buses received and retained all the revenue therefrom; that certain city employees supervised the operation of the buses; that the city in establishing the line acted upon the urgent request of residents in the vicinity thereof and for the purpose, as claimed, of supplying adequate transportation facilities in that vicinity, and that no attempt was made to comply with the provisions of the statutes for the operation of bus lines upon established routes.

*Held,* that no emergency exists authorizing the city to act contrary to the authority of the statutes and whatever emergency there may be, the record discloses no lack of adequate transportation facilities at any part of the line of the buses in question save along Dyckman street from Broadway to the ferry, a distance of about one-fourth mile, and on that street there is little or no traffic and no demand or necessity for a line for that short distance.

Furthermore, even though an emergency did exist, it would not justify the installation, maintenance and continued operation of buses upon established routes within the city of New York without compliance with sections 25 and 26 of the Transportation Corporations Law, section 53 of the Public Service Commission Law and sections 74 or 1458 of the Greater New York charter.

Therefore, a temporary injunction should be granted restraining the city of New York, during the pendency of the action, from taking any steps or doing anything toward the carrying out of said resolution.

APPEAL by the plaintiffs, Kingsbridge Railway Company and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of July, 1922, denying their motion for a temporary injunction.

*Alfred T. Davison* of counsel [*Frederic W. Frost* with him on the brief], for the appellants.

*John P. O'Brien,* Corporation Counsel [*Edgar J. Kohler* of counsel; *William E. C. Mayer* with him on the brief], for the respondents.

DOWLING, J.:

This is an appeal from an order which, after reargument, allowed the original decision to stand, denying plaintiffs' motion for an order enjoining and restraining the defendants, during the pendency of this action, among other things, from taking any steps or doing anything toward the carrying out of a resolution adopted by the board of estimate and apportionment of the city of New York on the 21st day of April, 1922, and for such other and further relief as might be proper in the premises. The resolution in question, so far as material to the present appeal, reads as follows:

"*Resolved,* That the Commissioner of Plant and Structures be and he is hereby authorized to arrange for the necessary motor vehicles and to operate or to regulate and supervise the operation of the same along the routes hereinafter described, for the purpose of carrying passengers until August 1, 1922, at a rate of fare not

exceeding five (5) cents upon each of such routes, and to use the staff of the Department of Plant and Structures, in so far as it may be necessary, to carry out the purpose of this resolution.

" The Commissioner of Plant and Structures is hereby authorized to modify the routes herein described, if he finds it necessary after the commencement of operation, provided he immediately gives notice to the Board that such change has been made.    *    *    *

" Washington Heights Line

" Terminals — 155th Street and Eighth Avenue; Dyckman Street Ferry.

" Route — 155th Street Viaduct, 155th Street, Edgecombe Avenue, 171st Street, Audubon Avenue, 182nd Street, Broadway, Sherman Avenue, Dyckman Street.   Return by same route."·

The following facts appear without dispute: The Third Avenue Railway Company owns and operates lines on Amsterdam avenue from One Hundred and Fifty-fifth street to Fort George, and operates lines on St. Nicholas avenue from One Hundred and Sixty-second street to Broadway, and on Broadway to the Harlem ship canal at Two Hundred and Twenty-fifth street, which last-mentioned lines are owned by the Kingsbridge Railway Company.   The board of estimate and apportionment authorized the defendant, Grover A. Whalen, as commissioner of plant and structures, to arrange for, to operate or regulate and supervise the operation of the buses on the " Washington Heights Bus Line," among others.   At least $46,000 is now appropriated in the budget of the city for salaries of the city employees who are employed to supervise and start all the buses in operation under the resolution.   There are now a chief bus supervisor, two deputy chiefs and twenty bus starters, the latter receiving $1,800 a year.   The buses in question have painted and printed on them on the outside the words: " City of New York, Department of Plant and Structures; " and whenever the words, " No Smoking " or " Spitting Prohibited," appear within the buses, the words, " Department of Plant and Structures," appear as the authority for such prohibition.   Each bus contains a long list of rules and regulations signed " Grover A. Whalen, Commissioner."   These motor buses have conspicuous signs thereon reading as follows: " City of New York, Department of Plant and Structures.   Fare 5c."   They are run under the supervision and inspection of the commissioner of plant and structures and on schedules fixed by him.   Permission in the form of a " starter's card " is given to these private owners of the motor buses to run on the route in question.   Operators have merely a State omnibus license and a chauffeur's license.   These buses are actually owned by the individual defendants, who have neither appeared nor opposed this

motion, and persons other than the city of New York or the defendants who are officers and agents thereof, receive and retain all the revenue therefrom. It is thus undisputed that the moneys spent and the time of the employees of the city of New York is actually being used to the profit of the private individuals named in the complaint, who retain all the fares collected from the bus lines in question. Notwithstanding the fact that the buses have on them the signs entitled, " City of New York, Department of Plant and Structures," and contain in numerous places the name of Grover A. Whalen, Commissioner, the city of New York denies all liability for damages arising from the negligent operation of these buses, and the only bond or other security given is an accident insurance policy running to the owner of the buses. There has been no pretense that there has been any attempt to comply with the provisions of law relating to the operation of buses and bus routes in the city of New York; and it is conceded by the answer of the city herein that the resolution of the board of estimate did not purport to authorize or permit the operation of the bus line in question under the provisions of section 74 of the Greater New York charter.

It appears from the map in evidence that the Washington Heights bus line parallels the street railway lines on Amsterdam avenue from One Hundred and Fifty-fifth street to One Hundred and Eightieth street, on St. Nicholas avenue from One Hundred and Sixty-second street to One Hundred and Eightieth street, and on Broadway from One Hundred and Eightieth street to Nagle avenue. These are the lines owned or operated by plaintiffs.

It appears, as well, that the city in establishing the line in question acted at the urgent request of residents of the Washington Heights section in order to establish transportation facilities connecting the termini of the Sixth Avenue and Ninth Avenue Elevated Railroad lines at One Hundred and Fifty-fifth street, operated by the Interborough Rapid Transit Company, with the ferry to Interstate Park on the Hudson river at Dyckman street. The traffic of the bus line in question consists of passengers whose objective in either direction is the Dyckman street ferry on the one hand, and the termini of the elevated railroads on the other. Of course, there is some short-haul traffic in between, but such traffic is so small as to be purely negligible.

It further appears that the Third Avenue Railway Company at one time controlled a franchise of its subsidiary, the Union Railway Company, to construct and operate a railroad from West Two Hundred and Seventh street to the foot of Dyckman street, but failed to construct the road along Dyckman street to the ferry, so

that the board of estimate and apportionment forfeited the franchise on October 4, 1918. The affidavit of the commissioner of plant and structures sets forth that " It was because of the utter lack of any transportation facilities for the people of the City of New York and those of the public generally desiring to use the Dyckman Ferry on the one hand and to run to the termini of the elevated railroad on the other, as well as because of the neglect and refusal of the plaintiffs, Third Avenue Railway Company and the said Union Railway Company, to use and operate under its franchise aforesaid, that the deponent put in place thereof the temporary bus operation described in the complaint herein along the so-called ' Washington Heights Line,' with terminals at 155th Street and Eighth Avenue and the Dyckman Street Ferry, as the same is set out more particularly in the paragraph or subdivision marked ' III ' of the complaint."

While defendants claim that the bus line does not compete with lines of the plaintiffs, it is clearly established that this bus line is three and one-half miles long and does in fact compete with the line of plaintiffs except at the extreme northerly end thereof. The distance along Dyckman street from Broadway to the ferry is a little over a quarter of a mile.

It is conceded that no right or authority has been given to operate the buses in question under sections 74 or 1458 of the Greater New York charter (Laws of 1901, chap. 466, as respectively added by Laws of 1914, chap. 467, and Laws of 1913, chap. 769), sections 25 or 26 of the Transportation Corporations Law (respectively added by Laws of 1913, chap. 495, and Laws of 1915, chap. 667, as respectively amd. by Laws of 1915, chap. 667, and Laws of 1919, chap. 307), or section 53 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134).

But the learned court at Special Term sustained the contention of the city that an emergency existed, amounting to a continuing necessity in the locality, wherefore the municipality, for the time being at least, was within its power in establishing and operating this paricular bus line.

Upon the present appeal the defendants contend that "An emergency exists as a matter of fact and of law, which requires prompt municipal action to promote the public welfare; and during which, methods and conditions, ordinarily prescribed by the statutes for the fulfillment of municipal powers, may be waived or unfilled." But whatever the emergency may be, the record discloses no lack of adequate transportation facilities at any part of the line of the buses in question, save along Dyckman street from Broadway to the ferry. And upon defendants' own showing, that

First Department, February, 1923.        [Vol. 204

short stretch carries little or no traffic; and is negligible in comparison with the total length of the route. Nor does it appear that there is either demand or necessity for a line for that short distance, or that it would be possible to maintain the same.

While, in our opinion, the defendants have not established the existence of any such emergency as they claim, even if it did exist, we do not believe it would justify the installation, maintenance and continued operation of buses upon established routes without compliance with the general provisions of law. The same question was squarely presented in *Huff* v. *City of New York* (202 App. Div. 425) and we agree with the opinion of Presiding Justice BLACK-MAR therein, as follows (at p. 426): " It was decided by this court in *Brooklyn City Railroad Co.* v. *Whalen* (191 App. Div. 737) that the city of New York has no power to establish or operate bus lines in the streets of the city, except by the grant of a franchise in the way pointed out by the statutes. That decision was affirmed by the Court of Appeals (229 N. Y. 570) and is the law of this State. Every consideration urged by the respondents in the case at bar was presented in that case and carefully considered. It is useless to go over again the reasons that induced this court to reach that decision. They are fully set forth in the opinion of the court and are presumably familiar to the corporation counsel and to the defendants.

" The Legislature has declared that an emergency exists in the transit situation in the city of New York. (Laws of 1921, chap. 134.) This ' emergency ' refers to the transit situation in the city as a whole, and that word as used in the act characterized the defects and insufficiencies of the general transit service. But while the Legislature declared such an emergency to exist, it at the same time prescribed the remedy, and the application of that remedy was conferred upon the Transit Commission and not upon the city of New York. The word ' emergency ' as used in the housing legislation of April and September, 1920, and in the Transit Commission Law, does not have the meaning given to it by lexicographers. The Legislature has given to the word ' emergency ' a new and peculiar meaning, namely, a permanent condition of insufficiency of service or of facilities, resulting in social disturbance or distress. The rules of law applicable to a condition of ' emergency ' as defined by the dictionaries and encyclopedias do not apply to an ' emergency ' with the meaning with which that word is used in the legislative enactments referred to. It is the condition or thing and not the word which calls into operation the rules of law."

And, as he further said (at p. 427): " If there is public need for

a bus line on the route selected, one may be easily and legally established.  The board of estimate and apportionment can grant a franchise in which the rights of the city and the public may be safeguarded, and the Public Service Commission or the Transit Commission will presumably act in furtherance of the public welfare. An attempt to establish the line by illegal methods can result only in failure and the loss to the public of the facilities which might have been secured by regular and legal procedure."  (See, also, *Brooklyn City Railroad Co.* v. *Whalen,* 191 App. Div. 737; affd., 229 N. Y. 570.)

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for an injunction *pendente lite* granted, with ten dollars costs.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.  Settle order on notice.