STANLEY BOGART, Respondent, v. JAMES J. WALKER, Mayor of the City of New York, and Others, Constituting the Board of Estimate and Apportionment of the City of New York, and Others, Appellants.

Second Department, January 29, 1931.

*Willard S. Allen* [*Arthur J. W. Hilly, Corporation Counsel, J. Joseph Lilly* and *Rollin H. Reid* with him on the brief], for the appellants.

*Joseph M. Lonergan,* for the respondent.

PER CURIAM. This court has held that the operation of buses upon the city streets, without the grant of a franchise by the board of estimate and apportionment and without the issuance by the board of transportation of a certificate of convenience and necessity, is illegal. (*Brooklyn City Railroad Co.* v. *Whalen,* 191 App. Div. 737; *Huff* v. *City of New York,* 202 id. 425.) The views expressed by this court were followed by the Appellate Division in the First Department in *Kingsbridge Railway Co.* v. *City of New York* (204 App. Div. 369, per DOWLING, J. [now P. J.].) It was also held in these cases that an *emergency* did not exist which warranted the operation of such buses under the auspices of the city authorities without franchise and certificate of convenience and necessity. This court has held in *Brooklyn City Railroad Co.* v. *Whalen (supra)* that the word " emergency " is defined as a sudden or unexpected occurrence or condition calling for immediate action, and that such could not be applied to a permanent condition of inadequacy of service. The three cases cited were decided, respectively, in May, 1920; July, 1922, and February, 1923. Since that time, for reasons not stated, the public authorities have not lawfully established the operation of bus lines, but from year to year, illegal operation has continued and developed, with the result that, in 1928, the so-called emergency motor bus system was operating 353 buses on 36 routes, carrying approximately 88,000,000 passengers a year, or over 240,000 per day, including Sundays. The report of the board of transportation, dated November 17, 1930, on file in this court in this action, shows 37 proposed routes, covering 13.1 miles in Manhattan, 63.9 miles in Brooklyn, and 104.2 miles in Queens, a total of 181.2 miles.

In *Brooklyn City Railroad Co.* v. *Whalen (supra)* four bus lines were involved, and it was claimed that they were in competition

with five established street railway lines in Brooklyn, the operator of which was the plaintiff in the action.

In *Huff* v. *City of New York* (*supra*) the operator of several street railway lines sought to restrain the operation of buses over one route. Competition was alleged.

In *Kingsbridge Railway Co.* v. *City of New York* (*supra*) the operator of street railway lines sought to restrain the operation of buses over one route, which in the greater part was in competition with the plaintiff's lines.

So in each of those cases, while there was illegal operation, action was taken because of unlawful competition rather than for the benefit of public convenience and welfare, although the latter was asserted as the basis of operation by the defendant in each case. Here, there is an entirely different situation. Despite the fact that the operation of these buses over this large number of lines has continued for a number of years, we are not advised of any objection upon the part of established street railway lines, nor of any public condemnation of such operation in light of existing conditions. Buses seem to be serving an urgent popular need. Public use has encouraged and expanded illegal operation. Under these circumstances the court cannot fail to heed notice of the possible hardships that may result from the immediate stoppage of these operations. To restrain the city authorities in the midst of winter will not only mean inconvenience and discomfort to the large number who are using these buses, but may result in sickness and death. This is especially true of outlying districts in the borough of Queens, where, in the absence of buses, long distances would have to be covered by residents before they could reach transit facilities to enable them to proceed to their destinations. The court is, therefore, of the opinion that it would be unwise to exercise its equitable powers in favor of an immediate restraint of the city authorities, and in the public interest deems it advisable to give them ample time within which to complete plans for the lawful operation of these buses. Such determination is not meant as an approval of existing conditions. The responsibility for a continuance of these illegal acts will have to rest where it belongs. The operation of the injunction will be stayed until May 1, 1931. There is authority for such procedure (*Wisconsin* v. *Illinois*, 281 U. S. 179), true, different in degree, but applicable in principle. This determination of the court should not be received by the city authorities as an invitation for a request of further indulgence. Prompt action is essential.

The order restraining defendants, *pendente lite*, from auditing or paying salaries, payrolls, bills or other expenses in connection

with the operation, regulation and supervision of buses and motor vehicles for the carrying of passengers along the streets of the city of New York, for the operation of which franchises have not been granted, and certificates of convenience and necessity issued, etc., should be affirmed, with ten dollars costs and disbursements. The operation of the injunction will be stayed until May 1, 1931, in order to enable the city authorities to take the necessary steps for the lawful operation of such buses upon city streets.

LAZANSKY, P. J., YOUNG, HAGARTY and TOMPKINS, JJ., concur; CARSWELL, J., not voting.

Order restraining defendants, *pendente lite*, from auditing or paying salaries, payrolls, bills or other expenses in connection with the operation, regulation and supervision of buses and motor vehicles for the carrying of passengers along the streets of the city of New York, for the operation of which franchises have not been granted, and certificates of convenience and necessity issued, etc., affirmed, with ten dollars costs and disbursements. The operation of the injunction will be stayed until May 1, 1931, in order to enable the city authorities to take the necessary steps for the lawful operation of such buses upon city streets.