THE PEOPLE OF THE STATE OF NEW YORK EX REL. ABRAHAM H. ELKIND et al., Plaintiffs, *v.* ABRAHAM ROSENBLUM et al., Defendants.

Supreme Court, Special Term, Westchester County, February 21, 1945.

*Nathaniel L. Goldstein, Attorney-General* (*Theodore Kiendl* of counsel), for plaintiffs.

*Morris L. Rosenwasser* for Abraham Rosenblum, defendant.

*William J. Wallin* for William Crocker, defendant.

*John J. Broderick, Corporation Counsel,* for City of Yonkers, *amicus curiæ.*

*Charles A. Brind, Jr.,* for Board of Regents of University of State of New York, *amicus curiæ.*

NOLAN, J. In 1917, the Legislature of the State of New York added to the State Education Law, section 866 (L. 1917, ch. 786, § 1), which provides ,with respect to the selection of members of the Board of Education in the class of cities which includes the City of Yonkers, that " * * * members of the board of education shall be appointed * * * by the mayor * * * but in a city having a population of four hundred thousand or more and less than one million, such appointment shall be subject to confirmation by the council." (Education Law, § 866, subd. 5.)

In 1938, by local law,* adopted by the vote of the electors of the city, pursuant to the provisions of section 19-a, of the City Home Rule Law, the Charter of the City of Yonkers was amended. The amended charter provides (art. XVII), with respect to the selection of members of the Board of Education that, " The members of such Board shall be appointed by the mayor with the advice and consent of the common council."

In 1943, the Mayor of the City of Yonkers, then in office, reappointed the defendants, who were then serving in that capacity, and whose terms were about to expire, members of the board of education. The Common Council neither advised such appointments nor consented to them. Since Yonkers was a city having a population of less than four hundred thousand, no such advice or consent was necessary, if the provisions of the Education Law alone governed such appointments. However, if the provisions of the amended charter, which limit the power of the mayor to appoint, by providing that the advice and consent of the council must be obtained, are valid, the appointments of defendants were void, and of no effect.

Apparently believing that such appointments were void and that vacancies consequently existed, the present Mayor has appointed the plaintiffs-relators to the board of education, to succeed the defendants, whose terms were stated, in such latter appointment, to have expired in 1943.

The latter appointees have now brought this action, to determine the title to the offices in question. The facts are not

---

* Not published in Local Laws of Cities in State, pursuant to section 22 of City Home Rule Law, although adopted as such local law.— [REP.

in dispute. The sole question to be decided is one of law, and as counsel have suggested, may be stated thus: does the State Education Law, or the Yonkers Local Law govern the appointment of members of the board of education?

If the local law governs, plaintiffs are entitled to relief. If the State law governs, defendants were properly appointed and the complaint must be dismissed.

The authority of the Legislature to enact section 866 of the Education Law is not questioned. The question presented concerns the authority of the city to restrict, by local law, the power of appointment vested in the mayor, by the State Education Law.

If such power existed, it must be found in the State Constitution, or in State legislation enacted pursuant thereto. The city, which is a municipal corporation, is a creature of the law. The law defines its powers and duties. It has no more right to act in excess of the powers granted to it than has a private corporation. (*Brooklyn City Railroad Co.* v. *Whalen*, 191 App. Div. 737.) Public education is essentially a State and not a city function. (*Gunnison* v. *Bd. of Education*, 176 N. Y. 11.) The Legislature, by general law, has provided for a complete system of public education, and imposed upon boards of education, as corporate bodies, separate and apart from the municipalities in which they exist, the responsibility of maintaining and administering its public school system. (*People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125; *Matter of Führmann* v. *Graves*, 235 N. Y. 77; *Matter of Divisich* v. *Marshall*, 281 N. Y. 170.) The same general law provides the powers and duties of such boards (Education Law, § 868), and for the qualifications, terms of office, and methods of selection of the members thereof (Education Law, § 866). Since the Legislature has so provided, the authority of a city to supersede such provision by local law, or ordinance, must come from an express grant of power, and will not be inferred from general grants, or held to exist as an implied, or incidental right. A State policy may not be ignored by a municipality, unless it is specifically empowered to do so in terms clear and explicit. (*People ex rel. Kieley* v. *Lent*, 166 App. Div. 550, affd. 215 N. Y. 626; *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury*, 230 App. Div. 228, affd. 256 N. Y. 619; *People* v. *County of Westchester*, 282 N. Y. 224.) Neither the Constitution of 1894 (as in effect when the amended charter was adopted), nor any State statute, gave to the City of Yonkers in express terms, any power to enact the provisions of the amended charter, under attack in

this action. The Constitution of 1894 provided, by section 3 of article XII (added in 1923; now Const. of 1938, art. IX, § 12), that cities should have power to adopt and amend local laws, not inconsistent with the Constitution and laws of the State, relating to the powers, duties, qualifications, number, mode of selection, etc., of all officers and employees of the city, and relating to other enumerated subjects, and directed the Legislature to provide by general law for carrying into effect the constitutional grant of power. That article of the Constitution provided, however, by section 7 (now art. IX, § 13, subd. B), that "Nothing in this article contained shall apply to or affect the maintenance, support or administration of the public school systems in the several cities of the state * * *." The City Home Rule Law, adopted in 1924 (L. 1924, ch. 363), pursuant to the constitutional direction, provided, by section 11, for the power of the cities of the State to adopt local laws. The same general grant of power with respect to the mode of selection of city officers and employees, was included in that section of the statute, but again in section 21 of the same law, the local legislative body of a city was prohibited from adopting a local law, which superseded a State statute, if such local law applied to, or affected the maintenance, support or administration of the educational system in such city. In the Constitution of 1938, adopted by the Constitutional Convention, and approved at the general election of that year, which became effective January 1, 1939, the City Home Rule provisions of the former constitution were generally revised, and certain new provisions were added. Thereafter, in 1939, the City Home Rule Law was amended in its entirety. Again, in both the Constitution and the City Home Rule Law, the cities of the State were granted power to enact local laws with respect to enumerated subjects, including the mode of selection of their officers and employees. The Constitution (art. IX, § 13, subd. B) again provided that nothing contained in the article which contained the city home rule provisions should " apply to or affect or be deemed to restrict the power of the legislature in relation to (a) the maintenance, support or administration of the public school systems in any city ", and a like prohibition against the adoption of local laws by local legislative bodies was included in section 21 of the City Home Rule Law. Neither the Constitution, nor the statute gave the cities of the State any express power to legislate with respect to matters affecting the public school systems, or boards of education. Such grant of power should not be implied from

the general power given with respect to the selection of city officers. Members of boards of education in cities perform functions which are generally regarded as connected with city government. They are, however, officers of corporations created by the State, separate from the cities in which they exist, for the purpose of enforcing a State function, and are not city officers. (Education Law, § 300; *People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125, *supra; Lewis* v. *Bd. of Education of City of New York,* 258 N. Y. 117.) In view of the fixed policy of the State, to regard public education as a State, and not a local function, it would seem that if the Legislature, or the framers of the Constitution had intended to include members of boards of education in the provisions of the Constitution and statute, relating to the mode of selection of city officers, clearer and more explicit language would have been employed.

It is true that the restrictions imposed on city legislation by section 21 of the City Home Rule Law, apply only to action by the local legislative bodies of cities. The city had no right, however, to adopt local laws by the vote of its electors, any more than it had to adopt such laws by action of its legislative body, if authority for such legislation had not been granted, by the Constitution, or by statute. Moreover, the Constitution expressly excluded from the power granted to cities to adopt local laws, whether adopted by local legislation, or by popular vote, any enactment which might apply to or affect the administration of the public school systems in such cities. Administration is generally understood to mean management, direction or supervision. It may be conceded that one who appoints a public officer does not join in the administration of the public office, by the act of appointment alone. The act of appointment, however, is one which has application to, and affects the administration of the duties or functions of such office, since without an appointment, the office cannot be administered.

The contention of the plaintiffs that the charter provision under attack is not inconsistent with section 866 of the Education Law, may not be sustained. It is true that in 1917, when section 866 of the Education Law was adopted, municipal government in general, and particularly in Yonkers, was carried on by a mayor, who was the chief executive of the city, and by a council, vested with legislative powers, and that under the present form of government, the mayor of the City of Yonkers is no longer its chief executive, and does not exercise the powers formerly vested in the elected mayor. The council, however, has not, as plaintiffs contend, retained to itself, the powers

formerly exercised by the mayor. The amended charter provides that the council shall have such powers "except as in this amendment otherwise provided ". The charter, as amended in 1938, directed the appointment of a city manager, who should be the chief executive, and administrative officer of the city, and vested in him many of the powers formerly exercised by the mayor. The Education Law may not be construed, however, in referring to the mayor, as the person who shall appoint, as meaning that the power of appointment shall be vested in the mayor, if the chief executive of a city, and in the council, if executive powers are vested in, or retained by that body. In 1917, neither the city manager form of government of cities, nor government by a council exercising executive power, was unknown to the Legislature. At the time of the adoption of section 866 of the Education Law, the Legislature had theretofore adopted the Optional City Government Law, which was then in effect. That statute provided for several plans of city government, among which were plans A, B and C. The first two plans provided for the vesting of legislative, administrative and executive powers in a council, and the third for legislative powers to be exercised by a council, and administrative and executive powers in a city manager. Under all such plans, the powers of the mayor were limited, and under plan C, his powers and duties were quite similar to those assigned to the mayor under the present form of government of the City of Yonkers. The Legislature, nevertheless, provided in the Education Law, for the appointment of members of boards of education, in Yonkers, and cities included in the same population classification, by the mayor, without the ratification or consent of the council. The court may not assume that in so doing, the Legislature acted in ignorance of the provisions which it had theretofore made, for forms of city government, other than that in effect in the City of Yonkers in 1917.

The court may not decide, and expresses no opinion, as to which method of appointment is preferable, or best calculated to assure an efficient and nonpolitical administration of the school system. That question is for the Legislature, and not for the court to decide, and is one which may not be decided by the city, either through its council, or by vote of its electors, until legislative sanction for such action shall have been obtained.

It is the court's opinion, therefore, that the appointment of the defendants in 1943, was a valid exercise of the appointive power vested in the mayor of the City of Yonkers, pursuant to

the provisions of the State Education Law, and that when plaintiffs were appointed, in 1944, no vacancies existed in the offices to which they were appointed. On the pleadings, defendants' title to office has been sustained. The motion of the defendant Crocker to dismiss the complaint is granted. Plaintiffs' motion to strike out the defense of the defendant Rosenblum, and for judgment on the pleadings is denied, and judgment is granted to defendant Rosenblum, pursuant to rule 112 of the Rules of Civil Practice, dismissing the complaint. Settle order accordingly, on notice.