Dye, J. (dissenting).
In this action for judgment declaring chapter 971 of the Laws of 1961 (Extraordinary Session of August 21, 1961) unconstitutional and permanently enjoining the defendant Mayor of the City of New York from proceeding to reorganize the New York City Board of Education under the challenged legislation and replacing plaintiffs with new appointees, the plaintiffs, two former members of the board, appeal on constitutional grounds from a judgment, entered upon an order of the Appellate Division, Second Department, unanimously affirming, without opinion, a judgment of the Supreme Court, Kings County (Bbeísweb,, J.) which dismissed the complaint for insufficiency and also from an incidental order which denied plaintiffs’ motion for a temporary injunction restraining the Mayor from acting in the premises and granted defendants’ cross motion to dismiss the complaint for insufficiency. (The joinder of the Attorney-General apparently is for the reason that the constitutionality of a statute is challenged [Executive Law, § 71].)
During the hotly contested New York City mayoralty campaign in the Summer of 1961, certain actions in the school construction and maintenance program were disclosed, leading to sensational charges of corruption and malfeasance. Early in August, Mayor Wagner requested the resignation of all nine members of the New York City Board of Education, all of whom were then serving unexpired terms with varying dates of termi *335 nation (Education Law, § 2553, former subd. 2). Six of these members submitted their resignations but three, including plaintiffs Lanza and Bank whose terms were to expire in May of 1962 and 1964 respectively, refused to resign. Thereafter the Legislature, at an Extraordinary Session held August 21, 1961, passed, on a message of necessity, the challenged legislation (L. 1961, ch. 971). That statute (amdg. Education Law, §§ 2553, 2554), after reciting that conditions existing in the school system in New York City had shaken public confidence, caused the Legislature grave concern and called for prompt corrective action, proceeded to list four categories of irregularity, concluding that “ this is a time of crisis for the New York city schools “ * * the terms of office of the persons then comprising the membership of the board of education of the city school district of the city of New York shall terminate ” (L. 1961, ch. 971, § 2).
The statute then made provision for a new and novel method of appointment of school board members. The Mayor’s power of appointment was continued, but sharply curtailed as to whom he should appoint and forfeiture of the power of appointment if he failed to act within a specified time. The eligible list from Avhich the Mayor Avas to make appointments was to be furnished by a selection board consisting of 11 members, who were to convene with the Chancellor of the Board of Begents, from the heads of certain named private business, educational, civic and philanthropic organizations, to wit:
the president of Columbia University;
the chancellor of the City University of Nbav York;
the president of New York University;
the president of the Association of the Bar of the City of New York;
the president of the New York City Central Trades and Labor Council;
the president of Commerce and Industry Association of New York, Inc.;
the president of the Public Education Association;
the president of the United Parents Associations of New York City, Inc.;
the president of the League of Women Voters of the City of New York;
the president of Citizens Union; and
the president of the Citizens Budget Commission, Inc.
*336 The members of the selection board thus designated but not named, no later than September 15, 1961, were to submit a list of 18 nominees to the Mayor for service on the Board of Education. No later than September 20, 1961, the Mayor was to appoint, from such list of 18 nominees only, nine persons to be members of the Board of Education. If he failed to do so within the time limit, then the appointments were to be made by the State Commissioner of Education. The statute also provides that the terms of the incumbents should expire and those of the new members begin on September 20 for staggered terms of 8 months to 7 years. Such a list of nominees was promulgated, none of whom were present or former members of the Board of Education. The Mayor made his selection within the allotted time and the nine so selected were duly sworn in as members of the Board of Education on September 19, 1961 at about 3:30 p.m. This time is mentioned because this action was commenced at about 5:00 p.m., September 18, and was returnable at Special Term on the morning of the 19th. Counsel waived all questions of practice and procedure in order to facilitate the presentment.
Appellants’ first contention may be disposed of summarily. There is no invasion of home rule. Matters dealing with education and with Boards of Education are not within the Home Buie Amendment (art. IX, § 13, subd. B) of the New York State Constitution (People ex rel. Elkind v. Rosenblum, 295 N. Y. 929, affg. 269 App. Div. 859, which affd. 184 Misc. 916).
Becognizing, then, that the power to select members of the New York City Board of Education rests with the Legislature, we come now to appellants’ second contention that there has been an unconstitutional delegation of that power to private individuals.
The statute under attack provides, in pertinent part: “At least five days before the effective date of section two of this act, the selection board shall submit a list to the mayor of at least eighteen names of nominees who, in the judgment of the selection board, are persons of outstanding experience, competence and qualification for service on the board of education. On the effective date of section two of this act, the mayor shall appoint nine persons from among the nominees to be the members of the board of education of the city school district of the city of New York.” (Emphasis supplied.)
*337 Thus we find that the 11 private individuals who comprise the so-called “selection board” may, in their untrammeled discretion, decide who shall, and who shall not, be considered by the local govermnental authorities for appointment to the Board of Education. Under this arrangement the Mayor, instead of being able to choose for appointment to the school board any qualified citizen from among the more than eight million inhabitants comprising the school district, including these plaintiffs, is limited to the 18 eligibles nominated by the selection board. The board, under the circumstances, is thus not merely a civic advisory committee, but a quasi-executive committee with mandatory power to limit the appointive prerogative of a duly elected public official. -However well intended the statutory scheme may be, its practical effect is to delegate a sensitive legislative function to a number of private persons whose identity may not be known for certain until the moment they convene for the purpose of making a selection of eligibles and, even then, their status is a nebulous one, since they are not sworn as public officers nor are they removable as such. The tendency to run government by committee is becoming a favorite device to circumvent the democratic process which our Constitution reposes in the Legislature. Such power may not be delegated to others. The promptings of expediency to deal with momentary political problems, however well directed, furnish a poor excuse for tampering with fundamental principles of government and “ can never serve in lieu of constitutional power ” (Carter v. Carter Coal Co., 298 U. S. 238, 291).
Not long ago this court unanimously struck down a statute which purported to delegate to a private corporation, the Jockey Club, the ‘ ‘ power, at [its] discretion, to grant licenses to Owners, Trainers, and Jockeys” (emphasis supplied). There we said: “In our view the delegation by the Legislature of its licensing power to The Jockey Club, a private corporation, is such an abdication as to be patently an unconstitutional relinquishment of legislative power in violation of section 1 of article III of the Constitution of this State which provides: ‘ The legislative power of this State shall be vested in the Senate and Assembly.’ [citing cases].” (Matter of Fink v. Cole, 302 N. Y. 216, 224-225).
Similarly, in Fox v. Mohawk & Hudson Riv. Humane Soc. (165 N. Y. 517), cited with approval in Matter of Fink v. Cole *338 (supra), it was said: “ I certainly should deny the right of the legislature to vest in private associations or corporations authority and power affecting the life, liberty and property of the citizens ” (id., p. 524).
Even if we were to adopt the argument of the Attorney-General that the selection board is itself a new governmental body, there is yet another objection to the statute. The members of the panel are themselves not individually selected by the Legislature or by an authorized State officer, such, for instance, as the Governor of the State, but their selection is left to the happenstance of who may be filling the chief executive office of the named private organization, the membership of which, so far as we know, may be composed of persons of certain types, classes and occupation, or perhaps even aliens; whom they may choose as their chief executive officer from time to time cannot be foretold—he might not even be a citizen—and whose identity cannot be known for certain until the very moment they meet to promulgate a list of names from whom the Mayor must select a Board of Education. Nor may anyone be sure how such persons are selected for the named executive office of the designated private voluntary organizations, since they have no connection with government, owe it no duty and are subject to no governmental supervision or control except as is common to any corporate and membership group. Even though we assume that the organizations named are composed of reputable law-abiding people who are motivated with the best of intentions, their chief executives, when meeting as a selection board, cannot be deemed a public body, absent an oath requirement or accountability for the action taken. The method of selection provided by the statute under review runs squarely afoul of the principle enunciated by this court in the Fox case: ‘ ‘ the corporations are private in the sense that they proceed from the voluntary action of the individual citizens alone (in many cases it is not necessary that the members of the corporation should be citizens), that the agents or officers of the corporation are appointed such by the corporators and that if such agents are invested by virtue of their agency alone with the power of public officers, it is in substance devolving the choice of public offices on a few of the citizens, and possibly persons not citizens, while under the Constitution, all public officers must be elected or *339 appointed by other public authorities and thus trace their title to power and authority either immediately or mediately bach to the people ” (p. 525; emphasis supplied). There is little or no relation between the unofficial, unnamed, unidentified persons designated to make up the selection board and the administration of the school system of the City of New York. The selection board thus authorized is not at all like the various State examining boards for professional licenses where, to be qualified, a distinct and special expertise is essential for the proper conduct of the examination. Why these particular voluntary organizations were selected, rather than some of the hundreds of others equally reputable with which the City and State of New York abound, does not appear and may be of no great importance, but it is certain that the organizations so selected cannot and do not represent the People of the City of New York. The delegation of legislative power thus attempted is more than a mere transfer of authority. It is a delegation upon a delegation done for the purpose of curbing and limiting the appointive power of the Mayor of the City of New York. What is to prevent the use of a similar pattern in respect to every other city and State public officer possessing the power of appointment is difficult to perceive. I apprehend no good reason for encouraging such a practice for it is by such means that constitutions adopted by a free people are gradually undermined and finally overthrown.
I find no merit to appellants’ contention that the statute is actually a bill of attainder. Its purpose was not to punish appellants. Nor were these unsalaried officials deprived of any property right, as was the case in United States v. Lovett (328 U. S. 303, 315), relied on by appellants. The statute there involved provided that certain named individuals, suspected of subversive activities, were not to be paid their salaries. The Lovett case has since been sharply limited by the United States Supreme Court (see, e.g., Garner v. Los Angeles Bd., 341 U. S. 716).
Nor do I find any basis for disturbing provisions of the statute dealing with subjects other than the method of appointment. The unconstitutional provisions may properly be severed and the remainder of the statute sustained (see, e.g., People v. Mancuso, 255 N. Y. 463; Schieffelin v. Goldsmith, 253 N. Y. 243; see, generally, 2 Sutherland, Statutory Construction [3d ed.], §§ 2401-2419).
*340 Since this is an action for a declaratory judgment, the complaint should, in any event, not have been dismissed (Rockland Light & Power Co. v. City of New York, 289 N. Y. 45).
The judgment appealed from should be modified by reinstating the complaint and awarding plaintiffs a judgment declaring that chapter 971 of the Laws of 1961 is invalid to the extent stated herein.