The People of the State of New York ex rel. David Pumpyansky, Respondent, *v.* James P. Keating, as Commissioner of the Department of Highways of the City of New York, Appellant.

1. Mandamus — A Citizen May Apply for a Mandamus to Enforce a Public Right.  An application for a peremptory writ of mandamus commanding the commissioner of highways of the city of New York to remove a stand for the sale of newspapers and periodicals upon a street of that city is a proceeding to enforce a right in which the general public is interested and may be maintained by a citizen and resident of the city.

2. New York City — News Stands under Stairways of Elevated Railroads — Effect of New York City Charter on Consolidation Act.  Under the provisions of sections 1608–1610 of the charter of the city of New York (L. 1897, ch. 378), specifically declaring that the charter is not a new enactment but a continuation of the Consolidation Act and its amendments and an extension thereof to the greater city and that omissions therefrom of any of the previous acts relating to or affecting the municipal corporations thereby consolidated shall not be a repeal thereof, the omission from the charter of the provisions of the Consolidation Act (L. 1882, ch. 410, as amd. by L. 1896, ch. 718) authorizing the common council to grant permits for the erection and maintenance of news stands under stairways of elevated railroad structures does not operate as a repeal thereof, and the municipal assembly, therefore, has the power to enact an ordinance providing for and regulating the erection of such news stands.

3. Peremptory Mandamus — Petitioner Must Show Clear and Absolute Right Thereto.  Where it appears from relator's petition and defendant's return thereto upon such application for a peremptory writ of mandamus that, if there is any encroachment by such news stand upon the sidewalk used by the public it is very slight and only in part, the application should be denied, since the ·right to the writ must be

determined upon the assumption that defendant's affidavits are. true, and the record must show that relator has the clear and absolute right to the relief asked for.

*People ex rel. Pumpyansky* v. *Keating,* 62 App. Div. 348, reversed.

(Argued September 30, 1901; decided November 12, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, made June 21, 1901, which reversed an order of Special Term denying an application by relator for a peremptory writ of mandamus commanding the defendant to remove a booth or stand for the sale of newspapers and periodicals from the southwest corner of Sixth avenue and Twenty-third street in the city of New York, and granted the application.

The facts, so far as material, are stated in the opinion.

*John Whalen, Corporation Counsel (Theodore Connoly* and *Chase Mellen* of counsel); for appellant. Peremptory mandamus is not the appropriate remedy under the circumstances of this case. The relator should show that he has some direct interest, differing from that of the public generally, in having the stand removed, or that his rights are infringed by its maintenance. (*Lansing* v. *Smith,* 4 Wend. 9.; *Smith* v. *McDowell,* 148 Ill. 51; *Morris* v. *Graham,* 16 Wash. 343; *Taylor* v. *Portsmouth R. Co.,* 91 Me. 193; *Knowles* v. *P. R. R. Co.,* 175 Penn. St. 623; *S. C. R. Co.* v. *W. R. Co.,* 46 S. C. 327; *Harrower* v. *Ritson,* 37 Barb. 301; *Lawton* v. *Steele,* 119 N. Y. 237; *Adler* v. *Met. E. Ry. Co.,* 138 N. Y. 179; *Brown* v. *Perkins,* 12 Gray, 89, 101.) The municipal assembly has the power to grant licenses for the erection and maintenance of booths under the elevated railroad stairs for the sale of periodicals and newspapers. (*People* v. *B. & O. R. R. Co.,* 117 N. Y. 150; *Jorgensen* v. *Squires,* 144 N. Y. 280; *Milhau* v. *Sharp,* 27 N. Y. 620; *Dougherty* v. *Village of Horseheads,* 159 N. Y. 154; *Palmer* v. *Larchmont El. Co.,* 158 N. Y. 231; *Ghee* v. *N. U. G. Co.,* 158 N. Y. 510; *Callanan* v. *Gilman,* 107 N. Y. 360; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 19; Angell on Highways

[3d ed.], § 91e; Elliott on Roads & Streets [2d ed.], §§ 651, 653, 694; *Town of Spencer* v. *Andrew*, 82 Iowa, 14.)

*Otto H. Droege* for respondent. The relator as a resident and citizen of the city of New York is entitled to maintain this proceeding. (*People ex rel.* v. *Halsey*, 37 N. Y. 344; *People ex rel.* v. *Daley*, 37 Hun, 461; *Simis* v. *Brookfield*, 13 Misc. Rep. 572; *O'Reilly* v. *Mayor*, 59 How. Pr. 277; *Le Boutellier* v. *Mayor, etc.*, N., Y. Daily Reg. April 23, 1884; *Ely* v. *Campbell*, 59 How. Pr. 333.) The streets are intended for the use of the public and in no event can the municipal assembly grant the use of the streets for any purpose other than a public use. (*D., L. & W. R. R. Co.* v. *City of Buffalo*, 4 App. Div. 562; Cooley's Const. Lim. [6th ed.] 652; *Callanan* v. *Gilman*, 107 N. Y. 365; *Cohen* v. *Mayor, etc.*, 113 N. Y. 535; *Matter of Burns*, 16 App. Div. 510; *P. Water Works Co.* v. *Bird*, 130 N. Y. 249; *Matter of Niagara Falls & W. Ry. Co.*, 121 N. Y. 319; *Matter of Townsend*, 39 N. Y. 174; *Buchholz* v. *N. Y., L. E. & W. R. R. Co.*, 148 N. Y. 640.) Chapter 718 of the Laws of 1896 has been repealed by the charter. Therefore, the municipal assembly in passing an ordinance allowing the erection of the stand complained of acted without authority, and its acts are illegal and void. (*Cohen* v. *Mayor, etc.*, 113 N. Y. 535; *McCaffrey* v. *Smith*, 41 Hun, 117; *People ex rel.* v. *Briggs*, 50 N. Y. 553; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Mayor, etc.*, v. *Gorman*, 26 App. Div. 193.) The municipal assembly has no authority to grant a permit to erect a stand such as the one in question without express legislative authority. (*Ely* v. *Campbell*, 59 How. Pr. 333; *Frenor* v. *Jackson*, 15 Abb. Pr. [N. S.] 115; *Mayor* v. *Heft*, 13 Daly, 301; *Stah* v. *Freaton*, 36 N. J. L. 79; *Glaesner* v. *A. B. Co.*, 100 Mo. 308; *Stah* v. *Mayor, etc.*, 52 N. J. L. 55; *Sims* v. *Frankfort*, 79 Md. 451; *Demore* v. *Girard*, 21 Col. 447; *Cohen* v. *Mayor, etc.*, 113 N. Y. 535.) The act of 1896 (Chap. 718) attempts to take public property for a private use and is, therefore, unconstitu-

tional and void. (*Taylor* v. *Porter*, 4 Hill, 140; *Matter of Deansville Cem. Assn.*, 66 N. Y. 571; *Norton* v. *Shelby County*, 118 U. S. 442; *Wyandoth County* v. *K. C., etc., R. R. Co.*, 47 Pac. Rep. 326; *Boales* v. *Ferguson*, 55 Neb. 565.)

Bartlett, J. Two questions are presented by this appeal: (1) Has the relator, merely as a resident and citizen of the city of New York, a right to maintain this proceeding? (2) Has the municipal assembly power to grant such licenses as the one in question?

We agree with the Appellate Division that the relator is entitled to maintain this proceeding as a citizen, he seeking to enforce a right in which the general public is interested, to wit, that the streets of the city shall remain unobstructed and unincumbered. (*People ex rel. Case* v. *Collins*, 19 Wend. 56; *People ex rel. Waller* v. *Board of Supervisors, Sullivan Co.*, 56 N. Y. 249; *Chittenden* v. *Wurster*, 152 N. Y. 345.) The relator makes no claim to a special interest, or to enforce a private right.

As to the remaining question, whether the municipal assembly had power to grant this license, the answer depends upon a construction of the Consolidation Act read in connection with the Greater New York charter.

The booth or stand in question was erected under a license of the municipal assembly issued on October 4th, 1900, authorizing its maintenance for the period of one year.

The statutory situation at that time was as follows: By section eighty-six of the Consolidation Act the common council was given certain powers to make ordinances, and by subdivision three of this section to regulate the use of sidewalks.

The legislature (Laws of 1896, chap. 718) amended this subdivision by adding thereto these words, "and also to grant permits for the erection of booths and stands in or on the space immediately underneath the steps of stairs leading to and from the elevated railroad station and within the curb line for the sale of newspapers and periodicals. Provided,

394    People ex rel. Pumpyansky *v.* Keating.    [Nov.,

Opinion of the Court, per Bartlett, J.    [Vol. 168.

however, that no booth or stand nor any projection therefrom shall be erected which is wider than the width of the stairs under which it is placed or which extends along the sidewalk a greater distance than to a point where the under surface of the stairs is not over seven feet from the level of the sidewalk."

The Greater New York charter, which took effect January 1st, 1898, confers, by section forty-nine, upon the municipal assembly power to establish, modify, amend or repeal ordinances, etc. Subdivision three of that section read as follows at the time the license in question was granted: "To regulate the use of streets, highways, roads, public places and sidewalks by foot passengers, animals, vehicles, cars, motors and locomotives, and to prevent encroachments upon and obstructions to the same, and to authorize and require their removal by the proper department; but they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof, during the erection or repairing of a building on a lot opposite the same, nor shall they permit the erection of booths and stands within stoop lines, except for the sale of newspapers, periodicals, fruits and soda water, and with the consent in such cases of the owner of the premises."

It will be observed that the subdivision quoted omits the addition to subdivision three of section eighty-six of the Consolidation Act, made by chapter 718 of the Laws of 1896, above quoted.

It is the contention of the relator that this omission indicates an intention on the part of the legislature to deprive the municipal assembly of the power to enact an ordinance authorizing the granting of permits for the erection of stands or booths under the stairways of the elevated railroad company.

The Special Term adopted a contrary view, but the Appellate Division, with a divided court, reached the conclusion contended for by the relator.

In the prevailing opinion below it is said: "It is quite evident that for the greater part of the distance no use could be made by the general public of this portion of the sidewalk, as

1901.]    People ex rel. Pumpyansky *v.* Keating.    395

N. Y. Rep.]    Opinion of the Court, per Bartlett, J.

the elevated railway structure practically excludes the use of the street for purposes of passage, and amounts to an appropriation of the space until it reaches such a height that passage under it is practicable.    *    *    *    We see no reason, therefore, why the appropriation of this part of the street for the erection of a news stand does not fall clearly within the exception and allows the legislature to authorize the municipal authorities to grant the right to occupy this space with the structure of which complaint is made."

The opinion then goes on to state in substance that the ordinance of the municipal assembly which permitted the granting of this license was unauthorized for the reason that the Greater New York charter had failed to continue in force the provisions of the act of 1896.

The municipal assembly, assuming it had the power, did enact an ordinance in May, 1899, providing in detail for the licensing of news stands under the stairways of the elevated railroad structure.

The corporation counsel appearing for the defendant and appellant, the commissioner of the department of highways of the city of New York, insists that the Greater New York charter (§ 49, subd. 3) did not repeal chapter 718 of the Laws of 1896 as embodied in the Consolidation Act at the time the Greater New York charter went into effect, when the following sections are read in connection with the same:

Section 1608: "The act of the legislature of the State of New York, passed July first, eighteen hundred and eighty-two, known as the New York city consolidation act of eighteen hundred and eighty-two, and acts amendatory thereof, and supplemental thereto, and other acts of the legislature of the State of New York now in force relating to or affecting the local government of the city of New York, as heretofore constituted, are hereby repealed so far as any provisions thereof are inconsistent with the provisions of this act, or so far as the subject-matter thereof is revised or included in this act, and no further.    So far as the provisions of this act are the same in terms or in substance and effect as the provisions of

the said consolidation act, or of other acts of the legislature now in force relating to or affecting the municipal and public corporations, or any of them herein united and consolidated, this act is intended to be not a new enactment, but a continuation of the said consolidation act of eighteen hundred and eighty-two, and said other acts, and is intended to apply the provisions thereof as herein modified to The City of New York as herein constituted, and this act shall accordingly be so construed and applied."

Section 1609 : " The mere omission from this act of any previous acts or of any of the provisions thereof, including said consolidation act of eighteen hundred and eighty-two, relating to or affecting the municipal and public corporations or any of them which are herein united and consolidated, shall not be held to be a repeal thereof."

Section 1610 : " All the provisions of all acts of the legislature of the State of New York, including said consolidation act of eighteen hundred and eighty-two, of a general and permanent character, relating to the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, in force at the time this act goes into effect, which are consistent with this act and its purposes, and which are not revised and included in or the subject-matter thereof covered by this act, are hereby extended to The City of New York as herein constituted, so far as they are consistent with this act, and are not in their nature locally inapplicable to other portions of the city than the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York. And the provisions of law thus extended to The City of New York as herein constituted shall apply to said city throughout its whole extent, anything to the contrary notwithstanding contained in the charter of any of the municipal or public corporations or laws relating thereto, which are by this act united and consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York."

We thus have the specific declaration (§ 1608) that so far

as the provisions of the new charter are the same " in terms or *in substance* and effect " as the provisions of the Consolidation Act, or of the acts of the legislature now in force relating to the greater city, they are not a new enactment, but a continuation of the Consolidation Act and its amendments.

It is then provided (§ 1609) that the mere omission from the new charter of the previous acts shall not be a repeal thereof.

Then follows the declaration, in substance (§ 1610), that all acts of the legislature, including the Consolidation Act, relating to the city and in force at the time of the consolidation, are extended to the greater city so far as they are consistent with the new charter.

In view of these sections and the provisions of the act of 1896 (Chap. 718), we are unable to agree with the conclusion reached by the learned Appellate Division that section forty-nine, subdivision three, of the new charter repeals by implication the act of 1896. The latter act deals with that portion of the street under the stairway of the elevated railroad structure that had already been taken from the use of the public and appropriated by the company for purposes sanctioned by the legislature.

The opinion below very properly refers to this fact and states, as we have already pointed out, that there is no reason why this portion of the street already withdrawn from public use should not be occupied by these news stands. The opinion further states that there was not at most an encroachment or obstruction by this news stand on the street of more than " about a foot." It follows that the language of section forty-nine, subdivision three, of the charter, which authorizes the municipal assembly to prevent encroachments upon the street, except that booths and stands within stoop lines may be licensed with the consent of the owner for certain purposes, does not apply to the situation presented in the case at bar. It is evident that the statute of 1896 did not contemplate any encroachment upon the street, and if in this case there is an obstruction of the sidewalk, it would be competent for the

court to require the portion of the structure so obstructing to be removed.

As relator has insisted upon the issuance of the peremptory writ of mandamus, the record must show that he has the clear and absolute right to the relief that has been accorded him.

The order below directs the commissioner of highways of the city of New York to forthwith remove the entire booth or news stand in question. On turning to the petition of the relator we find it alleges in subdivision VIII as follows : "That said stand or booth, as erected and maintained, is an obstruction and incumbrance to said street, and occupies a portion of the space on said street heretofore used by pedestrians thereon." This allegation is exceedingly vague, and the statement that the structure occupies a space heretofore used by pedestrians would be true if referring to the time before the elevated railroad stairway was constructed, but if it be construed as referring to the time when the license was granted, as it must, it is not true that the space occupied before the erection of the stand was used by pedestrians, as it is apparent that if there is any encroachment upon that portion of the sidewalk used by the public it is very slight.

The return states that this allegation of the relator "is not strictly correct, for a considerable part of the space occupied by the stand is under a portion of the stairway too low to be used by pedestrians ; that is to say, where the stairway descends from a height of at least seven feet above the sidewalk to a level therewith."

The relator attached to his petition the affidavit of an engineer, who gives the measurements of the news stand as to width, height and length, but he does not indicate to what extent it encroaches upon the traveled portion of the sidewalk.

When a relator in a mandamus proceeding goes to argument upon his petition and the opposing affidavits of the defendant and demands that a peremptory writ issue, as was the course pursued in this case, the proceeding is in the nature of a demurrer to the facts set up by the defendant, and the right to the writ must be determined upon the assumption

that the averments in the defendant's affidavits are true. (*People ex rel. Tenth National Bank* v. *Board of Apportionment*, 64 N. Y. 627; *People ex rel. Lewis* v. *Brush*, 146 N. Y. 60; *Matter of Haebler* v. *New York Produce Exchange*, 149 N. Y. 414; *People ex rel. Corrigan* v. *Mayor, etc., of Brooklyn*, 149 N. Y. 215; *People ex rel. City of Buffalo* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 570, 575.)

In view of this state of the record, the relator should have taken an alternative writ and a trial thereunder, establishing, if he could, to what extent the street had been obstructed. If an encroachment had been duly proved, the judgment entered at the trial would have been one commanding the removal of such portion of the structure as encroached upon the street.

The order appealed from should be reversed and that of Special Term affirmed, with costs.

PARKER, Ch. J., O'BRIEN, MARTIN and LANDON, JJ., concur; HAIGHT and VANN, JJ., not voting.

Ordered accordingly.