SLAUGHTER W. HUFF and ROBERT C. LEE, as Receivers, Appellants, *v.* THE CITY OF NEW YORK and Others, Respondents.

Second Department, July 22, 1922.

Municipal corporations — city of New York — action to restrain city from taking any steps toward operation of motor bus line over certain street — " emergency " defined — acts of city in establishing bus line illegal — action for injunction may be maintained by competing carrier or taxpayer — action to secure abatement of nuisance in street may be maintained by citizen and resident.

The word " emergency " as used in the Transit Commission Law and in the Housing Laws of April and September, 1920, does not have the meaning given to it by lexicographers but the Legislature has given to the word a new and peculiar meaning, namely, a permanent condition of insufficiency of service or of facilities, resulting in social disturbance or distress.

The acts of the city authorities in establishing the bus line in question are plainly illegal, for it is not shown that a franchise has been granted by the board of estimate and apportionment under section 1458 of the Greater New York charter, or that the Public Service Commission has given a certificate of convenience and necessity.

*It seems,* that an action may be maintained by a common carrier of passengers with whom the bus line comes in competition, or by a taxpayer for an injunction to restrain an illegal official act and to obtain a judgment for the loss to the city occasioned by such an illegal act, or by any citizen and resident of the city to secure the abatement of a nuisance in a public street.

APPEAL by the plaintiffs, Slaughter W. Huff and another, from an order of the Supreme Court, made at the Queens Special Term and entered in the office of the clerk of the county of Queens on the 6th day of July, 1922, denying their motion for an injunction, during the pendency of the action, restraining and enjoining the defendants from taking any steps or doing any act or thing toward the operation of a motor bus or omnibus line or route over Grand avenue in the former city of Long Island City, borough of Queens, between Eighteenth avenue and Second avenue.

*Alfred T. Davison,* for the appellants.

*William E. C. Mayer* [*John P. O'Brien, Corporation Counsel, Edgar J. Kohler* and *Robert J. Culhane* with him on the brief], for the respondents.

BLACKMAR, P. J.:

It was decided by this court in *Brooklyn City Railroad Co.* v. *Whalen* (191 App. Div. 737) that the city of New York has no power to establish or operate bus lines in the streets of the city, except by the grant of a franchise in the way pointed out by the statutes. That decision was affirmed by the Court of Appeals (229 N. Y. 570) and is the law of this State. Every consideration urged by the respondents in the case at bar was presented in that case and carefully considered. It is useless to go over again the reasons that induced this court to reach that decision. They are fully set forth in the opinion of the court and are presumably familiar to the corporation counsel and to the defendants.

The Legislature has declared that an emergency exists in the transit situation in the city of New York. (Laws of 1921, chap. 134.) This "emergency" refers to the transit situation in the city as a whole, and that word as used in the act characterized the defects and insufficiencies of the general transit service. But while the Legislature declared such an emergency to exist, it at the same time prescribed the remedy, and the application of that remedy was conferred upon the Transit Commission and not upon the city of New York. The word "emergency" as used in the housing legislation of April and September, 1920, and in the Transit Commission Law,* does not have the meaning given to it by lexicographers. The Legislature has given to the word "emergency" a new and peculiar meaning, namely, a permanent condition of insufficiency of service or of facilities, resulting in social disturbance or distress. The rules of law applicable to a condition of "emergency" as defined by the dictionaries and encyclopedias do not apply to an "emergency" with the meaning with which that word is used in the legislative enactments referred to. It is the condition or thing and not the word which calls into operation the rules of law.

Section 1458 of the charter of the city of New York† reads as follows: "No stage or omnibus route or routes for public use, or any alteration or extension thereof, or any alteration or extension of any existing stage or omnibus route, shall hereafter be put in

---

* See Pub. Serv. Comm. Law, art. 6, added by Laws of 1921, chap. 134, as amd.— [REP.

† Laws of 1901, chap. 466, § 1458, as added by Laws of 1913, chap. 769.— [REP.

operation in or upon any street, avenue, park, parkway, bridge or public ground within the city of New York until and unless a franchise or right therefor shall be obtained from the board of estimate and apportionment in like manner as, and subject to the limitations and conditions relating to, franchises or rights in this charter provided and imposed."

The grant of a franchise requires not only the action of the board of estimate and apportionment, but also of the Public Service Commission or the Transit Commission as to its convenience and necessity. The board of estimate and apportionment has granted no franchise, the Public Service Commission or the Transit Commission has issued no certificate, and consequently the acts of the city authorities in establishing this bus line are plainly illegal.

If there is public need for a bus line on the route selected, one may be easily and legally established. The board of estimate and apportionment can grant a franchise in which the rights of the city and the public may be safeguarded, and the Public Service Commission or the Transit Commission will presumably act in furtherance of the public welfare. An attempt to establish the line by illegal methods can result only in failure and the loss to the public of the facilities which might have been secured by regular and legal procedure.

The action may be maintained by a common carrier of passengers with whom the bus lines come in competition, or by a taxpayer for an injunction to restrain an illegal official act and to obtain a judgment for the loss to the city occasioned by such an illegal act of the officials, or by any citizen and resident of the city to secure the abatement of a nuisance in the public streets. (*People ex rel. Pumpyansky* v. *Keating,* 168 N. Y. 390.)

The order denying the motion for an injunction should be reversed on the law, with ten dollars costs and disbursements, and the motion for the injunction granted as prayed for, with ten dollars costs.

RICH, KELLY, KELBY and YOUNG, JJ., concur.

Order denying motion for injunction reversed on the law, with ten dollars costs and disbursements, and the motion for the injunction granted as prayed for, with ten dollars costs. Settle order on notice.