MAX E. KLINKENSTEIN, Respondent, *v.* THIRD AVENUE RAILWAY COMPANY, Appellant.

First Department, March 19, 1926.

Motor vehicles — action to recover for damages to plaintiff's motor bus caused by defendant's street car — motor bus was being operated in streets of New York city without lawful authority — said bus was public nuisance — there was causal connection between illegal operation of bus and accident — in absence of proof of willful, wanton or reckless act on part of defendant plaintiff cannot recover.

The plaintiff cannot recover for damages to his motor bus which he was operating as a common carrier in the streets of New York city, caused by one of defendant's street cars striking the rear of the bus as it was passing over the track, since it appears that the plaintiff was operating his motor bus in the streets of New York city without any lawful authority, and, therefore, the operation of said bus constituted a public nuisance, and there is no evidence that the damage was caused by the willful, wanton or reckless act of the defendant.

There was a causal connection between the illegal operation of plaintiff's motor bus and the accident, and the defendant's negligence, if any, was not the sole proximate cause of the damage, for at the time of the accident the plaintiff's motor bus was a public nuisance and constituted an obstruction, and the plaintiff was a trespasser upon the streets, and under such circumstances there is a direct connection between the illegal operation and the accident, and the presence of the bus in the street was, at least, a concurring cause of the damage sustained.

APPEAL by the defendant, Third Avenue Railway Company, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 18th day of November, 1924, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Second District, in favor of the plaintiff for $334.50 damages.

*Alfred T. Davison* [*Fredric W. Frost* of counsel], for the appellant.

*Max Steuer,* for the respondent.

MERRELL, J.   The action was to recover damages to the plaintiff's motor bus operating on New Chambers street in the borough of Manhattan.   The plaintiff's witnesses testified that on the 9th day of June, 1922, at about eight o'clock or a little after in the evening, the motor bus, driven by the plaintiff's chauffeur and operating under a daily permit granted by the department of plant and structures of the city of New York, was passing easterly on New Chambers street, and that in crossing Park Row a trolley car operated thereon by the defendant collided with the left rear corner of the plaintiff's bus, tearing away the same and necessitating an outlay of $334.50 in repairs.   No evidence was offered on the part of the defendant at the trial disputing the testimony of plaintiff's chauffeur and two witnesses sworn in behalf of the plaintiff testified that the plaintiff's motor bus was struck by the defendant's trolley car as it was nearly over the defendant's tracks.   The only ground upon which the defendant sought to prevent a recovery, and which the appellant urges upon this appeal, is that at the time of the accident the plaintiff's motor bus was being operated contrary to law and without any legal right, and that when injured the bus was a trespasser and public nuisance in the street and an obstruction therein, and that the plaintiff, under such circumstances, was not entitled to recover damages for the injuries to his bus.   It is conceded that the plaintiff's bus was being operated at the time without lawful authority.   No franchise had been granted by the State or other lawful authority for the operation of the plaintiff's bus.   No certificate of convenience and necessity

for the operation of the plaintiff's bus line was obtained from the Public Service Commission or the Transit Commission pursuant to section 53 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134) or sections 25 and 26 of the Transportation Corporations Law (respectively added by Laws of 1913, chap. 495, and Laws of 1915, chap. 667, as respectively amd. by Laws of 1915, chap. 667, and Laws of 1919, chap. 307). No effort had been made to comply with sections 74 and 1458 of the Greater New York charter (Laws of 1901, chap. 466, as respectively added by Laws of 1914, chap. 467, and Laws of 1913, chap. 769). At the close of the plaintiff's case the defendant moved to dismiss the complaint upon the grounds, *first*, that it affirmatively appeared that the bus was not operating under any certificate of necessity as provided by statute; *second*, that the plaintiff had not complied with any of the requirements of the statute as a prerequisite to the operation of the bus line for fares as a common carrier in the city of New York; *third*, that the plaintiff was not operating under a franchise, but was operating without due license and without any license or permission in law, and had complied with none of the provisions of law or the statutes, city ordinances or regulations for the operation of a bus for hire; that plaintiff's bus was a public nuisance upon the streets of the city of New York, and that the defendant could not be held liable in the absence of proof of willful negligence on its part. Defendant's motion was denied and exception thereto taken by the defendant. The defendant raised the same questions by exception to the charge of the court and to the court's refusal to charge the jury as requested by counsel for the defendant. We are of the opinion that the learned court below should have granted the defendant's motion to dismiss the complaint, and that under the proofs no actionable negligence was established justifying a recovery on the part of the plaintiff. Exceptions taken by the defendant to the denial of the defendant's motion to dismiss and in connection with the charge of the court and the court's refusal to charge as requested, clearly present the question involved. It has been repeatedly held that a bus operated in violation of law is a public nuisance. (*People ex rel. Judge* v. *Hylan*, 200 App. Div. 430; *Huff* v. *City of New York*, 202 id. 425; Penal Law, § 1530.) It has been held that the city of New York is without power to operate buses or stage lines in its streets, unless the power so to do has been granted by the State. (*Brooklyn City R. R. Co.* v. *Whalen*, 191 App. Div. 737; affd., 229 N. Y. 570; *Hedges* v. *Hylan*, 192 App. Div. 959; *Huff* v. *City of New York*, 202 id. 425; *Kingsbridge Railway Co.* v. *City of New York*, 204 id. 369. See, also, *Browne* v. *City of New York*, 241 N. Y. 96, 117.)

In *Brooklyn City R. R. Co.* v. *Whalen* (191 App. Div. 737; affd., 229 N. Y. 570) Mr. Justice BLACKMAR said (at p. 739): "The city of New York has no power or authority to operate bus or stage lines in its streets unless it be found in a grant from the People, represented in the Legislature. * * *

"The statutes of the State will be searched in vain for any grant of power, express or implied, to the city of New York to operate bus or stage lines such as those we are now considering. And, further, section 1458 of the charter of the city contains an express prohibition against establishing and maintaining such lines except by grant of a franchise. * * * "

And, further: "Although the city has no power to operate bus lines, it may grant franchises for that purpose. That is done through the board of estimate and apportionment and the mayor. (Greater N. Y. Charter, § 242.)* But there are certain limitations and conditions under which this power is to be exercised, none of which have been complied with in this case. * * * The anomalous situation is that while the statute expressly prohibits the operation unless under a franchise (Greater N. Y. Charter, § 1458), the city has, in plain disregard of the provisions of its own charter, without granting a franchise, authorized individuals to run these automobile stages on established routes through the streets for their own profit.

" * * * The city has power to grant a franchise, subject to the determination of its necessity and convenience. But the city has no power of municipal operation; nor has it the right to authorize others so to use the streets without observing the conditions to a legal and regular grant of a franchise."

In *Huff* v. *City of New York* (202 App. Div. 425) Presiding Justice BLACKMAR said (at p. 427): "The grant of a franchise requires not only the action of the board of estimate and apportionment, but also of the Public Service Commission or the Transit Commission as to its convenience and necessity. The board of estimate and apportionment has granted no franchise, the Public Service Commission or the Transit Commission has issued no certificate, and consequently the acts of the city authorities in establishing this bus line are plainly illegal.

"If there is public need for a bus line on the route selected, one may be easily and legally established. The board of estimate and apportionment can grant a franchise in which the rights of the city and the public may be safeguarded, and the Public Service Commission or the Transit Commission will presumably act in

---

*Amd. by Laws of 1905, chap. 629.— [REP.

furtherance of the public welfare. An attempt to establish the line by illegal methods can result only in failure and the loss to the public of the facilities which might have been secured by regular and legal procedure.

"The action may be maintained by a common carrier of passengers with whom the bus lines come in competition, or by a taxpayer for an injunction to restrain an illegal official act and to obtain a judgment for the loss to the city occasioned by such an illegal act of the officials, or by any citizen and resident of the city to secure the abatement of a nuisance in the public streets. (*People ex rel. Pumpyansky* v. *Keating*, 168 N. Y. 390.)"

In *Kingsbridge Railway Co.* v. *City of New York* (204 App. Div. 369) Mr. Justice DOWLING said (at p. 371): "These motor buses have conspicuous signs thereon reading as follows: 'City of New York, Department of Plant and Structures. Fare 5c.' They are run under the supervision and inspection of the commissioner of plant and structures and on schedules fixed by him. Permission in the form of a 'starter's card' is given to these private owners of the motor buses to run on the route in question. Operators have merely a State omnibus license and a chauffeur's license. These buses are actually owned by the individual defendants * * *. It is thus undisputed that the moneys spent and the time of the employees of the city of New York is actually being used to the profit of the private individuals named in the complaint, who retain all the fares collected from the bus lines in question. Notwithstanding the fact that the buses have on them the signs entitled, 'City of New York, Department of Plant and Structures,' and contain in numerous places the name of Grover A. Whalen, Commissioner, the city of New York denies all liability for damages arising from the negligent operation of these buses, and the only bond or other security given is an accident insurance policy running to the owner of the buses. There has been no pretense that there has been any attempt to comply with the provisions of law relating to the operation of buses and bus routes in the city of New York; and it is conceded by the answer of the city herein that the resolution of the board of estimate did not purport to authorize or permit the operation of the bus line in question under the provisions of section 74 of the Greater New York charter."

And, further (at p. 374): "While, in our opinion, the defendants have not established the existence of any such emergency as they claim, even if it did exist, we do not believe it would justify the installation, maintenance and continued operation of buses upon established routes without compliance with the general provisions

of law. The same question was squarely presented in *Huff* v. *City of New York* (202 App. Div. 425) and we agree with the opinion of Presiding Justice BLACKMAR therein * * *."

In *People ex rel. Judge* v. *Hylan* (200 App. Div. 430) BLACK-MAR, P. J., said (at p. 431): " The bus line was operated in violation of the law (Transp. Corp. Law, § 26); it was a public nuisance (Penal Law, § 1530), and the duty of the mayor is to enforce the law (Greater N. Y. Charter, § 115)."

Section 1530 of the Penal Law, so far as applicable to the case at bar, provides as follows:

" A ' public nuisance ' is a crime against the order and economy of the State, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:

" 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or, * * *

" 3. Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, * * * a public park, square, street or highway * * *."

In *Cohen* v. *Mayor, etc., of New York* (113 N. Y. 532) the action was brought to recover damages for the death of plaintiff's intestate, which occurred by reason of a wound in the head caused by the falling upon him of a pair of thills attached to a grocer's wagon while he was walking through one of the streets of the city. The wagon was used by its owner, the grocer, for the purpose of facilitating the transaction of his private business, and it was in no sense a public cart. When not in actual use the wagon was kept in the street in front of the owner's grocery store, day and night, under a permit which was granted by defendant in consideration of the payment by the owner of two dollars therefor. No law or ordinance existed which gave jurisdiction to the defendant, through its common council or through any of its officers, to license or permit such a use of the highway. PECKHAM, J., writing for the court in that case, said (at p. 535): " The storing of the wagon in the highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose, under temporary exceptions as to deposits for building purposes, and to load and unload wagons, and receive and take away property for or in the interest of the owner of the adjoining premises, which, it is not now necessary to more specifically enumerate. * * *

" It is no answer to the charge of nuisance that, even with the obstruction in the highway, there is still room for two or more wagons to pass, nor that the obstruction itself is not a fixture.

If it be permanently, or even habitually in the highway, it is a nuisance. The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets. The old cases said the king's highway is not to be used as a stable yard, and a party cannot eke out the inconvenience of his own premises by taking in the public highway. These general statements are familiar and borne out by the cases cited. * * *

"Familiar as the law is on this subject, it is too frequently disregarded or lost sight of. Permits are granted by common councils of cities, or by other bodies, in which the power to grant them for some purposes is reposed, and they are granted for purposes in regard to which the body or board assuming to represent the city has no power whatever, and the permit confers no right upon the party who obtains it. * * * "

The opinion continues: " He [alluding to the owner] acquired no right by virtue of the license to store his wagon in the street, and in doing so he was clearly guilty of maintaining a public nuisance. The defendant [city] was also guilty. It assumed to authorize the erection and continuance of a public nuisance. To be sure the legal power to grant the license to obstruct the street was, by the Legislature, withheld from the defendant, yet, nevertheless, it did grant just such a permit and took compensation on account of it. In thus doing, the city became a partner in the erection and continuance of such nuisance. It was a nuisance, not by reason of the manner in which the thills were tied up, but because the wagon was stored in the street. It was not a mere negative attitude which the defendant adopted, such as would have been the case had it simply acquiesced in the manner in which the street was used. In this case it not only acquiesced in such use, but it actually encouraged it by making out and delivering a license to do it, * * *. Under such circumstances the defendant must be held liable the same as if it had itself maintained the nuisance, for the owner of the wagon was nothing more than an agent through whom the defendant did this unlawful act. * * * "

The respondent assumes that there is no causal connection between the illegal operation of the plaintiff's bus and the accident resulting in its injury, and that the negligence of the defendant's motorman was the sole proximate cause of the injuries sustained to plaintiff's bus, and argues, upon such assumption, that the plaintiff, not having been shown to have been guilty of any negligent act on his part contributing to the injury, is entitled to recover for the damages caused solely by the negligence of the

defendant's motorman. It seems to me, however, that there is a direct connection between the unlawful presence of the plaintiff's bus in the street and its injury as the result of the collision. The plaintiff was engaged as a common carrier of passengers for hire. He was operating without a franchise or lawful right. His bus, under the decisions of the court, was a public nuisance, and he was a trespasser upon the streets. The bus, being there unlawfully, constituted an obstruction to the use of the streets. Had it not been there it would not have been injured. Under such circumstances, it seems to me, there is a direct connection, and the presence of the bus in the street was, at least, a concurring cause of the injury which it sustained.

The respondent relies upon two decisions of the Appellate Division, Fourth Department. In the first of these decisions (*Clark* v. *Doolittle*, 205 App. Div. 697) the plaintiff's automobile was duly licensed, but at the time it was injured was being driven by an unlicensed chauffeur in violation of section 289 of the Highway Law (added by Laws of 1910, chap. 374, as amd. by Laws of 1917, chap. 769, and Laws of 1919, chap. 472).* The Appellate Division, Fourth Department, held in that case that the fact that the automobile, lawfully upon the street, was being driven by the unlicensed chauffeur had no causal connection with the accident, and that the plaintiff might recover. In the other case (*Hall* v. *Hepp*, 210 App. Div. 149) two policemen of the city of Buffalo sued to recover damages suffered as the result of their motorcycles running into a house that was being moved in the street in the nighttime, upon which there were no warning lights. The defense at that time was that the motorcycles upon which the plaintiffs were riding were not equipped with proper lights. The Appellate Division, Fourth Department, held that the mere violation of some traffic law or ordinance by the drivers of the motorcycles did not of itself constitute such negligence as to make them trespassers upon the highway and to preclude the recovery of damages caused by the negligence of another.

It seems to me that these two cases upon which the respondent relies are clearly distinguishable from the facts in the case at bar, as in each of the two cases mentioned the plaintiff was guilty of the mere violation of a provision of the Highway Law or a city ordinance, while in the case at bar the plaintiff was not only a common carrier operating a bus contrary to statute, but the bus which he was operating was a public nuisance in the street and an obstruction therein. The plaintiff in operating said bus was a trespasser on

---

* Since amd. by Laws of 1921, chap. 580; Laws of 1922, chap. 17; Laws of 1924, chap. 360, and Laws of 1925, chap. 319.— [REP.

the streets, and I think was precluded from recovering, except for some willful, wanton or reckless act on the part of the defendant's motorman. There was no claim made in the case that the defendant's motorman acted either willfully, wantonly or recklessly in driving the trolley car which collided with the plaintiff's bus. I am of the opinion, in the absence of such proof, that there can be no recovery.

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed and the complaint dismissed, with costs to the defendant, appellant, in all courts.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur

Determination of the Appellate Term and judgment of Municipal Court reversed, and the complaint dismissed, with costs to appellant in all courts.