BEE LINE, INC., Respondent, Appellant, *v.* FIORELLA H. LA GUARDIA, as Mayor of the City of New York, and Others, Appellants, Respondents.

INTERCOUNTY ASSOCIATION OF OMNIBUS OPERATORS, Intervenor, Respondent.

CHRISTIAN LOOS, Respondent, *v.* FIORELLA H. LA GUARDIA, as Mayor of the City of New York, and Others, Appellants.

INTERCOUNTY ASSOCIATION OF OMNIBUS OPERATORS, Intervenor, Respondent.

Second Department, April 1, 1935.

152

*John Holley Clark, Jr.* [*John F. O'Ryan* with him on the brief], for the plaintiff Bee Line, Incorporated.

*James F. Conway*, for the plaintiff Christian Loos.

*Joseph L. Weiner* [*Paul Windels, Corporation Counsel,* and *Edward Garfield* with him on the brief], for the defendants other than Green Bus Lines, Inc.

*Walter R. Hart*, for the defendant Green Bus Lines, Inc.

*Edward S. Moran, Jr.*, for the intervenor, respondent, Intercounty Association of Omnibus Operators.

*Ralph R. Temple*, for Hollis-St. Albans Civic Association, Inc., as *amicus curiæ*.

HAGARTY, J. These actions for an injunction are similar in form and content and in the relief sought. The only difference is that of parties plaintiff, the first action having been commenced

by a corporation, organized under the Transportation Corporations Law, to prevent interference with its existing operations of buses within the city of New York, and the second action having been instituted by a taxpayer who seeks the same result on the ground of public interest.

Plaintiff Bee Line, Inc., has been operating bus lines in the borough of Queens since the early part of 1926 and has increased its operations thereafter over six routes specifically described in the complaint, two of which extend beyond the borough lines and into the counties of Nassau and Suffolk, and claims without dispute that it carries 13,000,000 passengers per annum over these lines, 7,000,000 thereof entirely within the city of New York. These routes, in so far as they lie within the city of New York, were operated from the 16th day of January, 1933, to the 15th day of January, 1934, pursuant to a franchise granted by the city of New York to plaintiff under the provisions of section 74 of the Greater New York Charter. That section provides the sole means by which such bus routes might be lawfully conducted by any operator, and section 1458 of the Greater New York Charter expressly forbids such operation until and unless a franchise or right therefor shall be obtained from the board of estimate and apportionment. Nevertheless, from January 16, 1934, to the present time, Bee Line, Inc., has continued to operate its buses over these routes without the requisite franchise. During most of this period of unlawful operation, it has done so with the acquiescence and, indeed, the approval of the defendants who are the administrative officials of the city of New York, and who will be hereinafter designated as the city defendants. At the inception, this unlawful operation seems to have been tolerated by the board of estimate as the body authorized to grant franchises, under the guise of an emergency; but, from the 5th day of April, 1934, that board commenced action looking toward the granting of franchises by advertising for bids, to which the Bee Line, Inc., responded and, thereafter, hearings were had, notices were published and resolutions were promulgated by the board in conformity with section 74 of the Greater New York Charter. This activity resulted in the preparation of a proposed franchise to Bee Line, Inc., for the operation of the routes in question and one other for a period of five years, and a proposed contract was forwarded to the Bee Line, Inc., on or about the 10th day of October, 1934. Negotiations had thus entered upon the final stage, but before completion and execution of a franchise, differences which had arisen between the operator and the city defendants caused an *impasse*. Instead of legalizing the operator's tenure, the city defendants propose to remove the

operator and peremptorily substitute in its place defendant Green Bus Lines, Inc. There are voluminous affidavits in this record on behalf of both sides which contain many and serious charges and counter-charges. It would be idle to consider them in detail, as any adjudication of their respective merits would be immaterial in the light of the salient facts. These are that Bee Line, Inc., is conducting its bus operations illegally and that the city defendants propose to terminate such operations, not because of their illegality, but for extraneous reasons, and to continue such illegal operation by and through a different company.

This court, in greater measure than any other tribunal in the State, has been called upon to determine controversies provoked, as here, by the failure of public authority to issue bus franchises in accordance with law. The leading case is *Brooklyn City Railroad Co.* v. *Whalen* (191 App. Div. 737; affd. without opinion, 229 N. Y. 570), wherein an order, granting an injunction at the instance of a competing street railroad company restraining defendant commissioner of the department of plant and structures from operating or supervising the operation and maintenance of bus lines by the city without warrant in law, as an emergency, and in disregard of the provisions of the charter relative to the granting of franchises, was affirmed. Following the *Brooklyn City Railroad Co. Case* (*supra*), this court granted injunctions restraining illegal operation of bus lines in *Huff* v. *City of New York* (202 App. Div. 425) and the First Department, in *Kingsbridge R. Co.* v. *City of New York* (204 id. 369).

Each of the parties to the first cause of action seeks to cover the deficiencies of its own position by pointing to those of the other. Each relies upon the other's weaknesses to prevent assertion of appropriate legal remedy. But this defect does not inhere in the second action, instituted by Christian Loos as a taxpayer. The defendants, appellants, in that action dispute his right to enjoin them, but it seems clear that his status is within the purview of section 51 of the General Municipal Law, which provides for the maintenance by a taxpayer of an action against public officers " to prevent any illegal official act " on their part. While the applicability of that section is disputed, it is unnecessary to enter into any extended discussion in view of express and conclusive authority to the contrary. In *Blanshard* v. *City of New York* (262 N. Y. 5) the action was to restrain the use of the public streets under a void or illegal franchise granted by the board of estimate of the city of New York, the charge being that the city had not held the public hearings requisite under section 74 of the Greater New York Charter nor made inquiry for determination of the

money value of the franchise, as therein provided. The Court of Appeals expressly held the action to be maintainable under section 51 of the General Municipal Law, and in so doing approved the holding in *Norris* v. *Wurster* (23 App. Div. 124), " wherein it was held that the granting of a franchise to operate a street railroad in the city of New York for a longer term than twenty-five years being illegal, an injunction would issue in a taxpayer's action to restrain the railroad from any further proceedings " (p. 16).

There is no question here as to the imminence of the proposed illegal act; the city defendants admit their purpose to effectuate it as quickly as possible.

The injunction sought is twofold: *First*, to restrain defendants from interfering with the operation of Bee Line, Inc., and, *second*, to prevent the substitution of the illegal operation of Green Bus Lines, Inc., for the illegal operation of Bee Line, Inc.

The learned Special Term has denied the application of the plaintiff Bee Line, Inc., for such temporary injunction and has dismissed its complaint, but has granted the injunction at the instance of the taxpayer, Loos.

With that disposition in the Bee Line, Inc., action, we are in accord. In support thereof, the defendants, appellants, contend that this operator has not cast its cause of action in accordance with section 51 of the General Municipal Law and does not allege that it is a taxpayer and hence may not be heard to restrain illegal operation. If this were the sole objection, it would be overruled on the authority of the *Huff Case* (*supra*) and *People ex rel. Pumpyansky* v. *Keating* (168 N. Y. 390). In the *Pumpyansky* case a citizen and resident sought to compel the defendant official to remove an illegal obstruction. It was there held (p. 393): " We agree with the Appellate Division that the relator is entitled to maintain this proceeding as a citizen, he seeking to enforce a right in which the general public is interested, to wit, that the streets of the city shall remain unobstructed and unincumbered." In the *Huff Case* (*supra*) Presiding Justice BLACKMAR wrote for this court (p. 427): " The action may be maintained by a common carrier of passengers with whom the bus lines come in competition, or by a taxpayer for an injunction to restrain an illegal official act and to obtain a judgment for the loss to the city occasioned by such an illegal act of the officials, or by any citizen and resident of the city to secure the abatement of a nuisance in the public streets. (*People ex rel. Pumpyansky* v. *Keating*, 168 N. Y. 390.) "

As a domestic corporation, and hence a citizen of the State, Bee Line, Inc., has a substantial interest in the routes in question,

not only in a general way in the capacity of citizen, but as a competitor of all other corporations organized under the Transportation Corporations Law in obtaining a franchise to operate over them. Irrespective of the provisions of section 51 of the General Municipal Law, which are not exclusive, such an interest creates a status sufficient to raise the question of illegality.

But from the face of the complaint itself, as well as from the affidavits in support of the motion, it appears beyond peradventure that Bee Line, Inc., is operating these routes illegally. It is thus in the anomalous position of seeking to prevent that which it is, itself, doing, for the indirect purpose of perpetuating its own wrongful operation. This will not do. Such a situation calls for the application of the doctrine of " clean hands." (*Wallack Construction Co.* v. *Smalwich Realty Corp.*, 201 App. Div. 133; *Fay* v. *Lambourne*, 124 id. 245; *Rogers* v. *O'Brien*, 153 N. Y. 357.)

As to the application of the taxpayer in his action, we are also in accord with the learned Special Term, and for the foregoing reasons, that he is entitled to a temporary injunction restraining defendants from permitting Green Bus Lines, Inc., or any other company or corporation, to operate buses on the routes now being operated by Bee Line, Inc., until valid franchises shall have been granted, which we construe as including all operators except Bee Line, Inc.

This, then, reduces a consideration of the scope of the injunction to that part of the order which restrains the city defendants from " interfering " with the operation of Bee Line, Inc., until valid franchises have been granted. The learned Special Term felt constrained to grant the injunction to this extent in the interest of public convenience and, indeed, necessity. While this motive is laudable and public interest is a weighty factor of which courts are not unmindful (*Bogart* v. *Walker*, 231 App. Div. 499), its preservation and promotion, in this case at least, is an administrative and not a judicial function. To restrain the city defendants from removing Bee Line, Inc., is to place the stamp of judicial approval upon illegality and to bring about pre-emption of property rights of value to those not entitled thereto. It is for the city defendants and those other city officials charged therewith, and not for the courts, to determine the path in which public interest lies. The injunction to this extent will be denied.

With respect to the preliminary objection of the city defendants on the ground of jurisdiction, we are of opinion that the venue of these actions was properly laid in Queens county, which is the scene of the bus routes.

In the first action the orders of the 18th day of February, 1935, and the 2d day of March, 1935, should be affirmed, with ten dollars costs and disbursements. In the second action the order of the 18th day of February, 1935, should be affirmed, with ten dollars costs and disbursements, and the order of the 2d day of March, 1935, modified by striking therefrom the following provision: "It is further ordered that the defendants Fiorello H. La Guardia, as Mayor of the City of New York, Bernard S. Deutsch, as President of the Board of Aldermen of the City of New York, Frederick J. H. Kracke, as Commissioner of Plant and Structures of the City of New York, and Lewis J. Valentine, as Police Commissioner of the City of New York, be and they hereby are enjoined from interfering with the operation of the buses of Bee Line, Inc., in Queens County, upon the routes described in the complaint until valid franchises and certificates of convenience and necessity shall have been issued covering such routes now operated by it." As so modified the order is affirmed, without costs.

LAZANSKY, P. J., SCUDDER, TOMPKINS and DAVIS, JJ., concur.

In the first action, orders of February 18, 1935, and March 2, 1935, affirmed, with ten dollars costs and disbursements.

In the second action, order of February 18, 1935, affirmed, with ten dollars costs and disbursements, and the order of March 2, 1935, modified in accordance with the opinion, and as so modified affirmed, without costs.