THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* IVAN UNCAPHER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BERNARD SHINNERS, Appellant.

County Court, Steuben County, May 20, 1955.

*Frank S. Swain* for appellants.

*Domenick L. Gabrielli, District Attorney,* for respondent.

BRISCO, J. The defendants appeal from a conviction in the City Court of the City of Corning on a charge of violating subdivision 6 of section 88 of the Vehicle and Traffic Law.

The defendants' automobiles were tagged on the morning of January 6, 1954, for being parked on the south side of Erie Avenue between Wall and Cedar Streets in the city of Corning. The parking meters on said avenue bore bags with the inscription " No Parking." The bags were placed upon the meters on the evening of January 5, 1954, by order of the police chief of the city.

In the city of Corning the power is reserved to the police commission to regulate, direct and close streets to traffic and parking. Such power had not been delegated by the commission to the chief of police. Any action by the chief of police, under such circumstances, involving the closing of streets to traffic and parking would be unlawful unless it was done within the purview of subdivision 3 of section 90 of the Vehicle and Traffic Law which provides: " Whenever a peace officer shall deem it advisable during a fire or at the time of an accident or special emergency and for such period of time only as is necessitated thereby for the public safety or convenience, temporarily to close any street or part thereof to vehicular traffic    *    *    * such official shall have power and authority so to do."

For several months prior to the alleged offense Erie Avenue in said street was under construction for conversion into a State highway. On January 4, 1954, work was commenced on the north side of Erie Avenue between the streets upon which the offense is alleged to have occurred. The city fire department

is located at the intersection of Erie Avenue and Cedar Street. At the request of the superintendent of public works of the city and of the chief of the fire department, the police chief decided that the south side of Erie Avenue should be closed to parking since the parking would impede the use of the said side of the street to traffic and particularly to its use by the city fire trucks. On the evening of January 5, 1954, upon the basis that a temporary emergency existed, the police chief ordered the placing of the " No Parking " bags over the parking meters on the south side of the street.

The defendants urge that no " special emergency " within the meaning of subdivision 3 of section 90 of the Vehicle and Traffic Law existed to authorize the police chief's action.

The Vehicle and Traffic Law does not define the words " special emergency ". In construing the meaning of a statute the primary consideration is to ascertain and give effect to the intention of the Legislature and where the language is clear and unambiguous the court must construe the statute according to the plain meaning of the language used. Words of ordinary import should receive their understood meaning. An emergency has been defined by the courts of our State to mean an unexpected occurrence or condition calling for immediate action. (*North Riv. Elec. Co.* v. *New York,* 48 App. Div. 14; *Brooklyn City R. R. Co.* v. *Whalen,* 191 App. Div. 737, affd. 229 N. Y. 570.) In a sister State of ours the court, in construing the meaning of the word " emergency " in a case involving the parking of motor vehicles in restricted areas, said in *Fennessey* v. *Pacific Gas & Elec. Co.* (116 P. 2d 479, 481 [Cal.]) : " The word ' emergency ' as used in legislative enactments does not always have precisely the meaning ascribed to it by lexicographers. Huff v. City of New York, 202 App. Div. 425, 195 N. Y. S. 257. It may be defined by the statute or ordinance. If so, an interpretation thereof must be confined to and limited by such definition and the subject matter enacted. The law governing this question indicates that ' emergency ' has reference to a method adopted as an expedient for meeting a situation which ordinarily calls for immediate action. Mason v. Crawford, 17 Cal. App. 2d 529, 62 P. 2d 420."

Attention has not been called to any decision of the courts of this State wherein the phrase " special emergency " is defined. However, in the light of the definitions of the word " emergency " it appears to convey the idea that it is something more pressing than the usual emergency, exigency, crisis or predicament and that it is distinguishable by some unusual

quality. It is not something that may reasonably be foreseen in time to deliberate, exercise judgment or discretion and to take action before serious damage occurs. It is sudden, acute and taut.

The Supreme Judicial Court of the State of Massachusetts has had occasion to define the phrase "a special emergency involving the health or safety of the people or their property." It said in *Safford* v. *Lowell* (255 Mass. 220, 225): "Without attempting an exact or all inclusive definition, it is manifest that that language *does not apply to a condition which may clearly be foreseen in abundant time to take remedial action* before serious damage to the health or to the safety of person or property is likely to occur." (Emphasis supplied.)

The creation of a torn-up street in proximity to the fire station may have also created a situation necessitating action to require the street to be unimpeded. However, this condition could have been clearly "foreseen in abundant time to take remedial action". It did not occur suddenly and unexpectedly. Nor was it unusual. Accordingly, it did not create a special emergency empowering the police chief to perform such acts not vested to him by any ordinance or statute.

Accordingly, the judgment of conviction is hereby reversed and the fines are hereby remitted.